# EXHIBIT 2

EXHIBIT 2
PAGE 72



**Mitchell1** — Powerful. Intelligent. Simple. — mitchell1.com

**Remit Payment to: Make Checks Payable to MITCHELL 1.**
- **From the U.S.:** Mitchell Repair • 25029 Network Place • Chicago, IL 60673-1250
- **From Canada:** Mitchell 1 • P.O. Box 15358 • Station A • Toronto, ON M5W 1C1 Canada
- **Correspondence to:** Mitchell1 • 14145 Danielson Street • Poway, CA 92064 • (888) 724.6742
- **Federal ID No.:** 33-0734307 • **GST No.** 888262094RT0001

## INVOICE/ORDER NO. _____

NEW ACCOUNT?   ❏ YES   ❏ NO      HAS INFO CHANGED? (✔ FOR YES)          SHIP TO:   ❏ REP   ❏ CUSTOMER   ❏ OTHER

- ACCOUNT NO.          PH.#          DATE
- COMPANY NAME                       T#
- ATTENTION                          M#
- STREET ADDRESS                     REP#
- CITY                ST/PROV        ZIP
- E-MAIL
- BILL TO NO.         PH.#           MEMBER #

| PRODUCT | QTY | ADDITIONAL USERS | SUBSCRIPTION | PROMO CODE | TERM | PRICE** |
|---|---|---|---|---|---|---|
| PD TMWKS SE Plus | ❏ | | ❏ New ❏ Ren. | | | $ |
| Manager SE Plus | ❏ | | ❏ New ❏ Ren. | | | $ |
| Manager Enterprise Pro | ❏ | | ❏ New ❏ Ren. | | | $ |
| Credit Card Procg | ❏ | | ❏ New ❏ Ren. | | | $ |
| ProDemand Rep/Est Auto | ❏ | | ❏ New ❏ Ren. | | | $ |
| ProDemand Rep Only Auto | ❏ | | ❏ New ❏ Ren. | | | $ |
| TechWorks | ❏ | | ❏ New ❏ Ren. | | | $ |
| TruckWorks | ❏ | | ❏ New ❏ Ren. | | | $ |
| Estimator | ❏ | | ❏ New ❏ Ren. | | | $ |
| eCRM | ❏ | | ❏ New ❏ Ren. | | | $ |
| eCRM + Cards | Cards __insert #__ (50-1200) (increments of 100 after 100) | | ❏ New ❏ Ren. | | | $ |
| Social CRM | ❏ | | ❏ New ❏ Ren. | | | $ |
| Social CRM Website Services | ❏ | | ❏ New ❏ Ren. | | | $ |
| TT.net | ❏ | | ❏ New ❏ Ren. | | | $ |
| Medium-Truck.net | ❏ | | ❏ New ❏ Ren. | | | $ |
| Truck Labor | ❏ | | ❏ New ❏ Ren. | | | $ |
| Repair-Connect | ❏ | | ❏ New ❏ Ren. | | | $ |
| Transporter | Single Pay ❏   Monthly Pay ❏ | | | | | $ |
| Pro Pack | ❏ | | ❏ New ❏ Ren. | | | $ |
| Message Pro | ❏ | | ❏ New ❏ Ren. | | | $ |
| Lube Pro | ❏ | | ❏ New ❏ Ren. | | | $ |
| Report Pro | ❏ | | ❏ New ❏ Ren. | | | $ |
| QuickBooks | ❏ | | ❏ New ❏ Ren. | | | $ |

Subtotal $ _____
+ Tax* if applicable $ _____
**TOTAL** $ _____

**DIRECT DEBIT**

I authorize Mitchell 1 to enroll me in the Direct Debit or credit card payment plan to enable the automatic payment of my Mitchell 1 monthly bill **OR** I agree to change my existing monthly payment by the amount of this order. I authorize the financial institution name below to charge my account for payment of my Mitchell 1 bill.

*Check one of the payment methods below:*

☐ Direct Debit (attach voided check)   ☐ Credit Card   Card# _____   Exp. Date _____

Signature _____   Date _____

*If tax exempt, you must attach exempt certificate.
**Pricing good for 30 days.

Remit Payment to Mitchell 1.

**FIRST MONTH OR FULL PAYMENT**
❏ Check (Ck #_____)   Amt:_____   ❏ P.O. Number: _____
❏ Credit Card   Card #: _____   Exp: _____

SPECIAL INSTRUCTIONS/OTHER PRODUCTS:

PDG: _____
CORP. ID: _____

THE UNDERSIGNED AGREE TO THE TERMS AND CONDITIONS SET FORTH ABOVE AND HAVE RECEIVED AND ACCEPTED THE TERMS OF THE END USER LICENSE AGREEMENT. IN WITNESS THEREOF, THE PARTIES HERETO HAVE EXECUTED THIS AGREEMENT ON THE RESPECTIVE DATE INDICATED ABOVE. CUSTOMER AGREES TO RECEIVE PROMOTIONAL E-MAILS FROM MITCHELL 1. IF CUSTOMER WOULD PREFER NOT TO RECEIVE PROMOTIONAL E-MAILS FROM MITCHELL 1, PLEASE VISIT OUR WEBSITE WWW.MITCHELL1.COM/UNSUBSCRIBE TO UNSUBSCRIBE.

End User/Owner Signature _____   Print Name _____   Title _____

Electronic Signatures. Each party agrees that the electronic signatures, whether digital or encrypted, of the parties included in this Agreement are intended to authenticate this writing and to have the same force and effect as manual signatures. Electronic signature means any voice recorded or electronic sound, symbol or process attached to or logically associated with a record and executed and adopted by the party with the intent to sign such record, including facsimile, telephone recording or e-mail electronic signatures.

THANK YOU FOR YOUR ORDER!

EOPF102014
EXHIBIT 2
PAGE 73

# MITCHELL 1 CUSTOMER LICENSE AGREEMENT

THIS MITCHELL 1 CUSTOMER LICENSE AGREEMENT (the **"Agreement"**) is by and between MITCHELL REPAIR INFORMATION COMPANY LLC and/or Partners, 14145 Danielson Street, Poway, California 92064 (**"Mitchell 1"**) and the purchaser identified on the Mitchell 1 Order Form (**"Customer"**) attached to this Agreement and incorporated herein.

1. **Term.** This Agreement will commence upon the date an Order Form (defined below) is accepted by Mitchell 1 as stated in Section 2 below (**"Effective Date"**) and unless terminated earlier in accordance with the Agreement, will remain in full force and effect for the period of time selected on the Order Form (**"Initial Term"**) and will be renewed as provided herein (**"Renewal Term"** and collectively with the Initial Term the **"Term"**).  The parties acknowledge that the Services and Subscription may have different Terms.  The expiration or other termination of a Service(s), and not a Subscription shall not termination the Agreement, and the Agreement shall remain in full force and effect, as it applies to the Subscription or Service(s) not terminated.  The termination of a Subscription, and/or a Service(s), and not other Service(s) shall not terminate the Agreement, and the Agreement shall remain in full force and effect, as it applies to the Service(s) not terminated.

2. **Order Forms.**  Each Mitchell 1 Product or Service (defined below) shall be ordered pursuant to one or more Mitchell 1 order forms that reference this Agreement and are signed by Customer and Mitchell 1 (**"Order Form"**), which shall become part of this Agreement.  Customer acknowledges and agrees that the Order Form and the registration, payment and other information submitted by Customer on the Order Form is complete and accurate.  <u>Electronic Signatures.</u>  Each party agrees that the electronic signatures, whether digital or encrypted, of the parties included in this Agreement are intended to authenticate this writing and to have the same force and effect as manual signatures. Electronic signature means any voice recorded or electronic sound, symbol or process attached to or logically associated with a record and executed and adopted by a party with the intent to sign such record, including facsimile, telephone recording or e-mail electronic signatures. Order Forms for: (a) Products provided electronically, or (2) Services and Products provided electronically, are accepted when Mitchell 1 sends Customer an electronic message confirming the Order Form.  All other Order Forms for: (y) Products not provided electronically, or (z) Services and Products not provided electronically, are accepted upon shipment of the Products, licensed FCA shipping point.  Order Forms for Services only are accepted when an authorized Mitchell 1 representative signs the Order From.  Any terms and conditions set forth on a purchase order or other written documentation from Customer shall be considered void and of no force and effect.  In the event of any conflict between the terms and conditions of this Agreement and those contained on an Order Form, the terms and conditions of this Agreement shall prevail, provided that the Agreement may be supplemented or modified by the Order Form only if the Order Form specifically identifies the provision of this Agreement to be supplemented or modified.

3. **Services.**  The only Services offered by Mitchell 1 are listed on the Order Form and if selected by Customer are subject to the terms of this Agreement. The Service(s) unless terminated earlier in accordance with the Agreement, will renew automatically on a month to month basis.  30-day notice is required to cancel during the renewal period. Notwithstanding anything herein to the contrary, if the Order From provides for a promotional term, the "Initial Term" and "Renewal Term" shall be the promotional term defined in the Order Form. The 30 day notice of cancelation stated above shall apply to any promotional term.

    3.1 **M1 Business Performance Services**

    3.1.1 **Overview.** If the Services may include Customer Retention Marketing Service Reminders (**"CRM"**), Target Market Promotions (**"TMP"**), Mitchell 1 ServiceIntelligence (**"MSI"**), Performance Center, Performance Reporting and Data Protection (**"DP"**) and other services that may be offered from time to time as further specified on the Order Form (hereinafter individually or collectively referred to as **"Service(s)"**) Section 3.1.1 through **Section 3.1.6** apply respectively to the Service(s) selected.

    3.1.2 **Customer Retention Marketing Service Reminders.** If Customer selects CRM as set forth on the Order Form, Mitchell 1 agrees to provide the following services:
    (a) Extract customer and vehicle information from the automotive facilities management system for the use of Marketing Services (defined below).
    (b) Provide "**Marketing Services**" that include service reminder postcards via mail, e-mail service reminders, and thank you e-mails for new customers.  Service reminders via mail and e-mail service reminders are limited to unique vehicle/customer records defined as eligible for solicitation based on the payment level chosen on the Order Form. E-mail service reminders will always be sent when an e-mail address is captured by Mitchell 1 via the extraction process or may be obtained by Mitchell 1 through third party e-mail providers.
    (c) Manage a database of customer and vehicle information for the Customer.
    (d) Send customer and vehicle data to print vendor of Mitchell 1's choice for Marketing Services.
    (e) Use data hygiene cleansing processes for data integrity and provide a secure environment for customer data storage.
    (f) Provide Customer technical and customer support for CRM services during the Term of the Agreement.
    (g) If Customer has opted for service recommendations on the Order Form, such recommendations will be added to service reminder postcards and e-mails. Service recommendations will be pulled from the Mitchell 1/ShopKey Manager program.
    (h) If Customer has opted for the Target Market Promotions (**"TMP"**) on the Order Form, Mitchell 1 agrees to provide promotional marketing services to the Customer at the listed price.  Data for TMP will be provided either from: (i) the Customer's existing customer database and uploaded for use on mailing campaigns, or (ii) for an additional fee and as indicated on the Order Form, Customer may elect to "rent" a customer mailing list through Mitchell 1 from a Third Party Provider (defined below).  If Customer elects to rent a mailing list as provided in this Section **3.1.2 (h)**, such rented mailing list shall be used only for one (1) mailing event and Mitchell 1 is not permitted and will not in any event provide a list of customers included in a rented mailing list. Standard promotional artwork templates are provided.  At Customer's option, Mitchell 1 will create custom templates for a one-time fee of $150 for each unique template requested. The $150 charge includes one (1) change or revision to the custom template.
    (i) Customer opting for eCRM e-mail service can choose from an extensive list of preexisting text coupon templates with the ability to include their own limited text. These preexisting text coupons can be updated at any time. Custom graphic coupons are available to customers subscribing to eCRM e-mail service at $150 per request.
    (j) Customers opting for monthly Postcard service can choose coupons from a large list of coupon design templates and make a maximum of 4 revisions in a twelve (12) month period. Additional custom coupon changes can be completed at $150 per request. There is no limit on switching coupons from the existing coupon template library. Customer opting for Postcard service can choose cover artwork from the existing Mitchell 1 library and receive one (1) custom design per year, and a maximum of two (2) revisions to that custom design. Additional cover art change requests can be completed at $150 per request.

    3.1.3 **OwnerAutoSite.com** The Customer acknowledges that Mitchell 1 will be posting consumer service history data on behalf of Customer via a unique Internet login, and Customer accepts full responsibility for doing so.

    3.1.4 **Mitchell 1 DataProtection Services.**  If Customer selects DataProtection Services (DataProtection), Mitchell 1 agrees to provide the following:
    **DataProtection Services.**
    (a) Periodic web based electronic copying and storage of files, including, and limited to, Mitchell 1/ShopKey shop management product database files.
    (b) Mitchell 1 customer service personnel to provide web based restoration of electronically stored files, including, and limited to, Mitchell 1/ShopKey shop management product database files.

    3.1.6 **Other Rights and Restrictions.**
    (a) Mitchell 1 reserves the right to use third parties to provide any of the Services under this Agreement (**"Third Party Provider"**).
    (b) Mitchell 1 reserves the right to modify or discontinue, temporarily or permanently, all or a part of the Service(s) to the extent such Service(s) are modified or discontinued for substantially all of its customers.
    (c) Mitchell 1 reserves the right to suspend or terminate provision of any Services in a particular jurisdiction if Mitchell 1 determines, in its reasonable discretion that the Services cannot be provided in accordance with applicable laws.
    (d) All software deemed outdated by Mitchell 1 must be removed from Customer's computer and returned to Mitchell 1 upon Mitchell 1's request with a certification from Customer that all software has been removed.
    (e) Mitchell 1 reserves the right to enforce its legal rights against anyone who uses the Services without its consent or in violation of this Agreement.
    (f) Mitchell 1 reserves the right to make changes in rules of operation, security measures, accessibility, procedures, types of terminal equipment, types of system equipment, operating system requirements, programming languages and any other matters relating to the Services and its use, without notice.
    (g) Customer, and not Mitchell 1, shall bear sole responsibility to obtain, maintain and operate, or cause to be obtained, maintained and operated at its own expense, any and all equipment and non-Mitchell 1 software that may be used in conjunction with the Services.
    (h) Mitchell 1 agrees not to disclose or use any personal data shared with Mitchell 1 except to the extent necessary to carry out its obligations under this Agreement, which may include sharing such data with Third Party Providers. Mitchell 1 reserves the perpetual right to aggregate and market data collected from a Customer for various purposes, including without limitation, benchmarking, research and data analysis, and Customer shall be responsible for providing Customer's customers with any necessary notice of said right.
    (i) To the extent any of the Services involve the use of software by Customer, Customer shall not: (i) sell, transfer, rent, lease, sublicense or dispose of the Services, or any part or copies thereof; (ii) modify, change, alter, translate, create derivative works from, reverse engineer, disassemble or decompile the Services in any way for any reason or otherwise attempt to discern the source code to the software; (iii) provide, disclose, divulge or make available to, or permit use of the Services by, any third party; or (iv) copy or reproduce all or any part of the Services except as expressly permitted in this Agreement.
    (j) In addition to any restrictions set forth in this Agreement, use of the Services is limited to the restrictions set forth in the Order Form.  All rights not expressly granted to Customer in this Agreement or the Order Form are reserved by Mitchell 1.
    (k) Customer shall be responsible for giving Customer's customers notice that if an e-mail address is not provided, a third party e-mail provider will be used in an attempt to obtain  said customer's e-mail address.
    (l) Mitchell 1's Third Party Providers are direct beneficiaries of this Agreement and shall have the right to enforce this Agreement against Customer with respect to any violation by Customer affecting the products of Third Party Providers licensed to Customer under this Agreement.

    3.2 **Subscriptions.**  The products offered for licensing are listed on the Order Form and the products selected by the Customer shall be referred to in this Agreement as the "Products". Products are available by subscription and subject to the terms of this Agreement.

    3.2.1 The Products are licensed, and not sold, on a subscription-basis only. Customer may select on the Order Form the type of subscription to be purchased by Customer (each a "**Subscription**"). Each Subscription may be subject to different terms and conditions as described below. The Term of a Subscription will commence on the Effective Date, and unless terminated earlier in accordance with this Agreement, will continue for the term described in the applicable Subscription below (each a "**Subscription Period**"). Each renewal of a Subscription will be considered a new Subscription Period. During the applicable Subscription Period, Customer will receive any updates to the Product that Mitchell 1 makes available generally to its customers as part of the applicable Subscription (**"Updates"**).

    3.2.2 **The terms below will apply to the Subscription selected by Customer: (i)** Rental. The Subscription Period for this Subscription is effective for an initial term of twelve (12) or twenty-four (24) months following the Commencement Date ("**Initial Rental Subscription Period**"). In addition to the applicable Subscription fees, Customer may be required to pay Mitchell 1 a one-time activation fee to commence the Rental Subscription. The activation fee is non-refundable once the Order Form is submitted to

end user/owner initial _____

EXHIBIT 2
PAGE 74

Mitchell 1, unless Mitchell 1 declines to accept the Order Form, Mitchell 1 will bill Customer monthly, with payments due within thirty (30) calendar days following the date of the Mitchell 1 invoice. After the Initial Rental Subscription Period, the Subscription Period for this Subscription will renew automatically on a month to month basis.  30-day notice is required to cancel during the renewal period.  A Subscription may not be cancelled during the Initial Rental Subscription Period. Mitchell 1 reserves the right to change pricing upon notice to Customer prior to each Rental Renewal Period. At the end of the Initial Rental Subscription Period or any Rental Renewal Period, Customer must return to Mitchell 1 the Product, any Updates, documentation and all copies thereof and discontinue use of the Product, any Updates and all documentation.

4. **License.**
   (a) Subject to the terms and conditions of this Agreement, Mitchell 1 grants to Customer a personal, nonexclusive, nontransferable, limited license to access and use the executable version of the applicable Product during the applicable Subscription Period purchased by Customer solely for the purpose of: (i) providing vehicle mechanical services; (ii) estimating vehicle mechanical parts and labor cost estimates; and (iii) conducting vehicle shop management. Unless the Order Form specifies otherwise, the license shall be for one location; with location referring to a distinct building or site. If the Order Form authorizes more than one user, then the number of users shall be limited to the number set forth on the Order Form. When technically and reasonably feasible, Customer may make one copy of the Product solely for backup purposes.
   (b) Regardless of the Subscription Period, Customer may not (i) copy or reproduce the Product except as permitted in this Agreement; (ii) allow the Product or data from the Product to be made available to any person other than Customer; (iii) assign, sell, transfer or pass along the data, the Product or access to the Product; (iv) translate, reverse engineer, decompile, disassemble or otherwise access the source code; and (v) provide services for a fee or other-wise use the Product without prior written agreement from Mitchell 1. Mitchell 1 and its third party licensors shall retain title at all times to the Product, and Customer shall have no rights there-in except to use the Product as permitted by this Agreement.
   (c) The Products may be comprised of third party products licensed by a third party to Mitchell 1 and will be subject to all of the terms and conditions of this Agreement. Customer's license to use such third party products will be limited to Customer's applicable Subscription for such third party products and may be used only in connection with the Mitchell 1 Products.
   (d) Customer shall not remove, alter or destroy any form of copyright notice, proprietary markings or confidential legends placed upon or contained with the Product.

5. **Ownership Rights Reserved.**  No title or ownership in and to the Services or Products or any part thereof, are transferred to Customer under this Agreement.  Mitchell 1 retains all right, title and interest in and all copyright, trade secret rights and other intellectual property and proprietary rights in and to the Services, Products and all Updates, corrections, enhancements, modifications and derivative works thereof.  Customer shall not alter, distort or remove any proprietary notices or legends from the Services or Products and shall include such notices on any authorized copies of the Services or Products.

6. **Publicity**.  Neither party shall use the name or marks of the other party or refer to or identify the other party in advertising or publicity releases, promotional or marketing correspondence to others without first securing the written consent of such other party, except that Mitchell 1 shall have the right to:
   (a) use Customer's name in oral sales presentations, client lists, press releases, brochures, marketing materials and financial reports indicating that Customer is a customer of Mitchell 1; and
   (b) Disclose the terms of this Agreement, or any part thereof, to potential investors or acquirers of Mitchell 1 or for purposes of complying with the disclosure requirements of federal and state securities laws.

7. **Payments.**
   (a) In consideration of the rights granted to Customer herein, Customer shall pay to Mitchell 1: (i) the initial fees as set forth in the Order Form (ii) the then-current renewal fees applicable to a Service or Subscription for a Product ordered by Customer, and (iii) any sales, use, excise and other similar taxes, and shipping costs applicable to an Order (collectively, the "**Customer Fees**"). Unless otherwise specified in this Agreement, Mitchell 1 reserves the right to change Customer Fees at anytime.  Payments shall be due within thirty (30) days of the date of Mitchell 1's invoices. Late payments will earn interest charged to Customer at the lesser of: (i) the monthly rate of 1.5 percent; or (ii) the maximum interest amount allowed by local law. In the event a payment is more than ten (10) days late, Mitchell 1 shall have the right to suspend use of the Products, cease providing Services, take possession of the system and all related materials in Customer's possession and cease delivery of any updates or upgrades until the account is made current.  Customer shall be responsible for all costs, including costs, including attorneys' fees, incurred by Mitchell 1 due to Customer's delinquency.
   (b) As applicable, Customer hereby authorizes Mitchell 1 to charge the Customer Fees to the payment card or checking account number provided by Customer. By submitting a payment card or checking account number as the form of payment, Customer represents and warrants that Customer's use of the particular card or checking account is authorized and that all information submitted is true and accurate (including, without limitation, payment card number and expiration date). In doing so, Customer also authorizes Mitchell 1 to charge to the payment card or checking account tendered all amounts payable by Customer to Mitchell 1 based on the Subscription plan selected (including all renewals thereof), including, but not limited to, all fees and any applicable taxes Mitchell 1 is required to collect.  Customer agrees to update its account registration and payment card or checking account information immediately with any change in the payment card information including, but not limited to, any change in expiration date. If Mitchell 1 is unable to process the payment card or checking account at any time, Customer's account may be immediately suspended or terminated and Customer will remain responsible for all amounts payable by Customer to Mitchell 1. The payment card or checking account issuer agreement governs use of your payment card or checking account

and Customer must refer to that agreement with respect to Customer's rights and liabilities as an account holder. If Mitchell 1 does not receive payment from its payment card or checking account issuer or its agent, Customer agrees to pay Mitchell 1 all amounts due upon demand by Mitchell 1. Mitchell 1 reserves the right to not renew Customer's account at any time for any reason.

8. **Maintenance of Equipment and Software.**  Customer, and not Mitchell 1, shall bear sole responsibility to obtain, maintain and operate, or cause to be obtained, maintained and operated at Customer's own expense, all equipment and software that may be necessary for Customer to access and use the Services or Product. The minimum requirements may be updated from time to time by Mitchell 1. Customer is responsible solely for ensuring compatibility with the Services and Product and for any new hardware or software required by Customer to maintain compatibility with the Services or Product.

9. **Confidentiality.**  Customer acknowledges and agrees that the Services and Product that is comprised of software, equipment and data, together with such other materials, data and information that Customer has access to or receives from Mitchell 1 (all such information and materials collectively called **"Proprietary Materials"**) are the unique, valuable, confidential and proprietary product of Mitchell 1 and contain substantial trade secrets of Mitchell 1 and are entrusted to Customer in confidence to use only as expressly authorized in this Agreement. Customer shall, and shall cause its employees and any other third party, including its independent contractors, representatives, affiliates and agents, who, with the express consent of Mitchell 1, has access to such Proprietary Materials to keep all Proprietary Materials confidential and shall not disclose or permit access to the Proprietary Materials to any person or entity other than its employees for the purpose of attaining the objects of this Agreement; and to not use the Proprietary Materials for any purpose other than as expressly permitted herein. Customer shall be required to apply the same standard of care that it uses with respect to its own valuable confidential information and Customer represents that it uses commercially reasonable efforts at all times to protect such information. Customer shall promptly notify Mitchell 1 in writing of any unauthorized knowledge, possession or use of the Proprietary Materials of which it becomes aware. Customer agrees that such software, equipment and data and any portions of the Products not available to the general public may not be disclosed to others, copies, reproduced, disseminated, broadcast, displayed, reverse engineered, disassembled, compiled or used for any purpose other than as specifically permitted under this Agreement. Customer shall use its best efforts to protect the Product and to prevent dissemination or use of the Product or Services to or by unauthorized person.  Customer shall not assign, pledge, sublicense or permit any other use of the Product or Services without obtaining the prior written consent of Mitchell 1, which consent may be withheld at the sole discretion of Mitchell 1.  Customer's obligations under this Section 9 shall survive termination or expiration of this Agreement.

10. **WARRANTY AND DISCLAIMER.**
    (a) THE SERVICES AND PRODUCTS ARE DELIVERED "AS IS" AND MITCHELL 1 MAKES NO REPRESENTATIONS OR WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SYSTEM INTEGRATION, INFORMATION CONTENT, DATA ACCURACY, NON-INFRINGEMENT, INTERFERENCE WITH ENJOYMENT OR OTHERWISE. MITCHELL 1 ALSO DOES NOT WARRANT THAT THE OPERATION OF THE SERVICES, PRODUCTS OR ANY SOFTWARE RELATED THERETO WILL BE UNINTERRUPTED OR ERROR FREE.
    (b) CUSTOMER ACKNOWLEDGES AND AGREES THAT:
       1. MITCHELL 1 IS NOT THE MANUFACTURER OR DISTRIBUTOR OF ANY AUTOMOTIVE REPAIR PARTS REFERENCED IN THE PRODUCT;
       2. NEITHER MITCHELL 1 NOR ITS THIRD PARTY LICENSORS MAKE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE QUALITY OR AVAILABILITY OF SUCH PARTS OR THE ACCURACY OF THE PRICES OF SUCH PARTS;
       3. THE DATA MADE AVAILABLE TO CUSTOMER ON OR THROUGH THE PRODUCT OR BY THE SERVICES IS PROVIDED ON AN "AS IS" BASIS WITHOUT WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, ACCURACY, COMPLETENESS, AND INFORMATIONAL CONTENT;
       4. CUSTOMER USES SUCH DATA SOLELY AT CUSTOMER'S OWN RISK. CUSTOMER ACCEPTS FULL RESPONSIBILITY FOR ANY AND ALL DECISIONS MADE BY CUSTOMER IN RELIANCE UPON SUCH DATA;
       5. CUSTOMER ACCEPTS FULL RESPONSIBILITY FOR ANY AND ALL DECISIONS MADE BY CUSTOMER IN RELIANCE UPON SUCH DATA;
       6. IN ENTERING INTO THIS AGREEMENT AND/OR PURCHASING A SUBSCRIPTION, CUSTOMER IS NOT RELYING UPON ANY REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) MADE BY MITCHELL 1, ITS THIRD PARTY LICENSORS, AUTHORIZED RETAILERS OR ANY OTHER PERSON;
       7. IF CUSTOMER UTILIZES ANY NON- MITCHELL 1 SUPPLIED INTERFACE PROGRAM TO INTERFACE WITH THE PRODUCT OR SERVICES, CUSTOMER SHALL LOOK SOLELY TO THE VENDOR OF SUCH INTERFACE PROGRAM WITH RESPECT TO ANY LOSSES OR DAMAGES CAUSED BY SUCH INTERFACE PROGRAM; AND
       8. NEITHER MITCHELL 1 NOR ITS THIRD PARTY LICENSORS IS RESPONSIBLE FOR OBSOLESCENCE OF THE PRODUCT OR SERVICES, NOR SHALL HAVE RESPONSIBILITY FOR SUSPENDED, OUTDATED OR UNCORRECTED VERSIONS OF THE PRODUCT, SERVICES OR ANY PART THEREOF.

11. **LIMITATION OF LIABILITY.**
    (a) IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL DAMAGES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, LOSS OF USE, TRADING LOSSES, LOSS OF SAVINGS, BUSINESS INTERRUPTION, OPPORTUNITY, LOSS OF DATA, OR OTHER PECUNIARY LOSS) ARISING OUT OF OR RELATED TO THE SERVICES OR PRODUCTS, THE USE OF OR INABILITY TO USE THE SERVICES OR PRODUCTS, OR THE TERMS OF THIS AGREEMENT, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.
    (b) NOT WITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, AND REGARDLESS OF THE CAUSE OR THE FORM OF ACTION (WHETHER BREACH OF CONTRACT OR WARRANTY, NEGLIGENCE OR OTHER TORT, STRICT LIABILITY, OR OTHERWISE), A PARTY'S LIABILITY TO THE OTHER FOR DAMAGES SHALL BE LIMITED TO ACTUAL DIRECT DAMAGES AND SHALL NOT EXCEED THE FEES PAID BY CUSTOMER FOR THE AFFECTED SERVICES OR PRODUCT DURING THE MONTH IN WHICH THE CLAIM FIRST ACCRUED.  THE LIMITATIONS ON LIABILITY SET FORTH IN THIS SECTION 12 SHALL NOT

end user/owner initial _____

EXHIBIT 2
PAGE 75

APPLY TO EITHER PARTY'S BREACH OF ITS CONFIDENTIALITY OBLIGATIONS UNDER THIS AGREEMENT OR TO CUSTOMER'S BREACH OF THE LICENSES AND RESTRICTIONS SET FORTH IN THIS AGREEMENT AND THE APPLICABLE ORDER FORM(S).

(c) CUSTOMER'S SOLE REMEDY UPON BREACH OF THIS AGREEMENT BY MITCHELL 1 THAT MITCHELL 1 IS UNABLE TO CURE AFTER A REASONABLE NOTICE PERIOD, SHALL BE TERMINATION OF THE AGREEMENT AND REFUND OF UNEARNED PORTIONS OF THE FEES STATED ON THE ORDER FORM(S).

12. **Equitable Relief.** Notwithstanding any other provision of this Agreement, Customer acknowledges that any breach of its obligations under this Agreement with respect to the Services or Products and any other proprietary rights and confidential information of Mitchell 1 or its Third Party Providers will cause irreparable injury to Mitchell 1 or its third party providers, as applicable, for which there are inadequate remedies at law and, therefore, Mitchell 1 or its Third Party Providers shall be entitled to equitable relief in addition to all other remedies provided by this Agreement and the applicable Order Form(s) or available at law.

13. **Indemnification.** Customer agrees to defend, indemnify, and hold Mitchell 1 harmless against all claims and damages, including without limitation, reasonable attorney's fees arising out of Customer's use of the Services or Products, including but not limited to, any Update, unless such claims or damages result from, or unless Customer's authorized use of the Services or Products has given rise to, claims or damages based on the infringement of any copyright or other proprietary right of any third party. Mitchell 1 shall not be liable to you for interception of CWS data through the Internet by third parties. Mitchell 1 has no control over, is not responsible for and will not be liable to you for the actions of Internet systems and service providers or natural disasters that create delays or interruptions of services. Customer acknowledges and agrees that if Customer utilizes any non-Mitchell 1 supplied interface program to interface with the system, Customer shall look solely to the vendor of such interface program with respect to any losses or damages caused by such interface program. Mitchell 1 is not responsible for obsolescence of the system and data updates and shall have no responsibility for suspended, outdated or uncorrected versions of the system and data updates.

14. **Termination.**
    (a) Mitchell 1 shall have the right to terminate this Agreement in the event of any of the following: (1) if Customer defaults in the performance of any of Customer's obligation under this Agreement involving the payment of money and the same shall not be cured within ten (10) business days after written notice to Customer; (2) if Customer defaults in the performance of any of Customer's obligations under this Agreement or breaches any restriction imposed on it by this Agreement, and if such default or breach involves performance or restrictions other than the payment of money and Customer shall not commence curing the same within ten (10) business days after written notice to Customer, and if such default is not thereafter cured within ninety (90) days; or (3) if a receiver is appointed or one or more creditors do take possession of all or substantially all of the assets of Customer, or if Customer shall make a general assignment for the benefit of creditors, or if Customer resolves to go into voluntary liquidation.
    (b) Notwithstanding the forgoing, Customer acknowledges that certain third party products licensed by Mitchell 1 to Customer under this Agreement may be terminated by Mitchell 1 upon violation of this Agreement by Customer without any opportunity to cure and the following actions by Customer shall constitute a material breach of the Agreement and Mitchell 1 may terminate the Agreement, in part or in whole, upon notice to Customer without the opportunity to cure: (1) any use or dissemination of the Product or Services that is not expressly permitted in this Agreement, (2) any unauthorized access to, or use of, the Product or Services by or through Customer; or (3) failure to make timely payment of any Customer Fee. Immediately upon the effective date of termination of this Agreement, Customer shall cease using the Product and Services.
    (c) Upon termination of this Agreement by Customer for a material breach by Mitchell 1, Mitchell 1 shall refund to Customer the unearned portion of the Customer Fees (i.e., pro-rated for the remainder of the Subscription Period for Products or Term for Services following the effective date of termination). Upon termination of this Agreement by Mitchell 1 for a breach by Customer, Customer shall not be entitled to any refund of the Customer Fees.
    (d) The terms and conditions of Sections 5, 7, 9, 11, 12, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29 and 30 shall survive the termination of this Agreement for any reason.

15. **Effect of Termination.** In the event of the expiration or termination of this Agreement for any reason: (a) Customer shall refrain from any and all use of the Services and Products in any manner whatsoever, except as otherwise provided in this Agreement; (b) any CWS Web Site and Mitchell 1 Network Number shall immediately be shut down; (c) Customer shall not be relieved of any of its obligations which have accrued on and prior to the date of expiration or termination of this Agreement; (d) Customer shall return the system, data updates, and all Mitchell 1 documents and information pertaining thereto; (e) except as set forth in **Section 11(c)**, Customer shall not be entitled to any refund of any payments or fees paid to Mitchell 1 by Customer; and (f) Customer must immediately return to Mitchell 1 any and all Proprietary Materials.

16. **Assignment.** Mitchell 1 may freely assign its rights hereunder without securing Customer's permission to do so. Customer may not assign its rights or delegate its duties hereunder without first securing written permission from Mitchell 1, which permission may be withheld at the sole discretion of Mitchell 1. For purposes of this **Section 17**, Customer shall be deemed to have assigned this Agreement if there is, in the aggregate, a change of ownership of twenty-five percent (25%) or more of Customer or a merger or combination of Customer with another entity or business, whether Customer is the surviving entity or not. Any such attempted assignment shall be void and shall constitute a default entitling Mitchell 1 to terminate this Agreement. Notwithstanding the foregoing, upon payment by Customer of a reasonable transfer fee, this Agreement may be assigned by Customer to a purchaser of all or substantially all of its business upon the prior written consent of Mitchell 1, such consent not to be unreasonably withheld.

17. **Choice of Law and Forum.** This Agreement has been entered into in San Diego, California under the laws of the State of California and Customer and Mitchell 1 agree that it shall be interpreted, and all disputes arising hereunder shall be resolved, in accordance with California law. To the extent recourse to a court is allowed hereunder, both Customer and Mitchell 1 agree that jurisdiction of any claim or suit hereunder shall be exclusively the courts located within the County of San Diego, California. Both parties hereby submit to the personal jurisdiction of such courts and hereby disclaim the applicability of the Uniform Commercial Code, the Uniform Computer Information Transactions Act and the United Nations Convention of Contracts for the International Sale of Goods.

18. **Arbitration.**
    (a) Any dispute, claim or controversy arising out of or relating to this Agreement or breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in San Diego, California, before a sole arbitrator, in accordance with the laws of the State of California for agreements made in and to be performed in that State. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the award may be entered in any court having jurisdiction.
    (b) The arbitrator shall have no authority to amend or modify the terms of this Agreement or to award punitive or consequential, indirect, special or exemplary damages, and the award may be enforced by judgment.
    (c) Before, during, or after arbitration each party shall have the right, without awaiting the outcome of the arbitration, to seek provisional remedies from an appropriate court including but not limited to temporary restraining orders or preliminary injunctions. Seeking any such remedies shall not be deemed a waiver of either party's right to compel arbitration.

19. **Limitation on Right to Pursue Claims.** ANY CLAIM SHALL BE MADE BY FILING A DEMAND FOR ARBITRATION WITHIN ONE (1) YEAR FOLLOWING THE OCCURRENCE FIRST GIVING RISE TO THE CLAIM.

20. **Attorney's Fees.** If any action or proceeding is brought in connection with this Agreement, the prevailing party shall be entitled to its attorney's fees and other costs and expenses incurred in such action or proceeding, including any appeals or petitions therefore.

21. **Irreparable Harm.** Customer acknowledges and expressly agrees that any breach by of the provisions of the licenses in **Section 4** of this Agreement or any of the provisions **Section 3** or **Section 9** would cause Mitchell 1 irreparable harm for which damages would not be an adequate remedy. Therefore, Customer agrees that in the event of any breach of the licenses in **Section 4** of this Agreement or any of the provisions **Section 3** or **Section 9**, Mitchell 1 will have the right to seek injunctive relief against continuing or further breach by Customer, without the necessity of proof of actual damages. This right to seek injunctive relief without necessity of proof of damage will be in addition to any other right that Mitchell 1 may have under this Agreement, or otherwise in law or in equity.

22. **Notice.** Any notice or other communication required or permitted to be given to either party shall be in writing and shall be deemed to have been properly given and to be effective on the date of delivery, if delivered in person, or by facsimile (with electronic confirmation of receipt and mailing a copy) or five (5) days after mailing by registered or certified mail, postage paid, to the other party at the following addresses, or the address provided to the other party in writing from time to time: In the case of Mitchell 1: 14145 Danielson Street, Poway, CA 92064, Attention: CRM Department Tel: 888-724-6742 (toll free) Fax: 858-391-5262. In the case of Customer, the address specified in the Order Form.

23. **Waiver.** No delay or omission by either party hereto to exercise any right occurring upon any noncompliance or default by the other party with respect to any of the terms of this Agreement shall impair any such right or power or be construed to be a waiver thereof. A waiver by either of the parties of any of the covenants, conditions or agreements to be performed by the other shall not be construed to be a waiver of any succeeding breach thereof or of any covenant, condition or agreement herein contained.

24. **Severability.** If any provision of this Agreement or applicable Order Form(s) is found by a court of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability shall not invalidate or render unenforceable any other part of this Agreement or applicable Order Form(s), but the Agreement or applicable Order Form(s) shall be construed as not containing the particular provision or provisions held to be invalid or unenforceable.

25. **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. This **Section 26** shall not be construed to alter or modify the prohibitions upon assignments or transfers by Customer expressed elsewhere in this Agreement.

26. **Force Majeure.** Mitchell 1 will not be liable for, or be considered to be in breach of or default under this Agreement, on account of any delay or failure to perform as required by this Agreement as a result of any cause or condition beyond its reasonable control. Mitchell 1 may suspend or terminate provision of any Services or Product as a result of any such cause or condition.

27. **Counterparts; Facsimile Signatures.** This Agreement and the applicable Order Form(s) may be executed in one or more duplicate originals, all of which together shall be deemed one and the same instrument. This Agreement and the applicable Order Form(s) shall be binding on the parties through facsimile signatures, with originals to follow by regular mail or overnight courier.

28. **Entire Agreement.** This Agreement and the applicable Order Form(s) sets forth the entire, final and exclusive agreement between Customer and Mitchell 1 as to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, between the parties. This Agreement may be modified only pursuant to a writing executed by authorized representatives of Customer and Mitchell 1.

29. **Export Laws.** Customer shall not export, re-export, disclose, or distribute the Services or Product in violation of any applicable laws or regulations, including the export laws and regulations of the United States, and shall comply with all such laws and regulations.

30. **Complimentary Products.** If Customer has received complimentary products, Sections 1, 2, 3, 7 and 11(c) shall not apply to the complimentary products, except the definition of any term in an inapplicable Section shall remain in effect to the extent such term is used in an applicable Section. Customer shall not receive Services with complimentary products. This Agreement will commence upon Customer's receipt of the complimentary products. CUSTOMER'S SOLE REMEDY UPON BREACH OF THIS AGREEMENT BY MITCHELL 1 SHALL BE TERMINATION OF THIS AGREEMENT, AND DAMAGES NOT TO EXCEED $1. This Agreement, as to the complimentary products, may be terminated by either party at any time upon written notice. Mitchell 1 shall further have the right to terminate this Agreement, as to the complimentary products, by denying Customer access to the complimentary products at its sole discretion.

End User/Owner Signature _____

EXHIBIT 2
PAGE 76

EOPF102014