# EXHIBIT 2

EXHIBIT 2
40



EXHIBIT 2
41

APPLY TO EITHER PARTY'S BREACH OF ITS CONFIDENTIALITY OBLIGATIONS UNDER THIS AGREEMENT OR TO CUSTOMER'S BREACH OF THE LICENSES AND RESTRICTIONS SET FORTH IN THIS AGREEMENT AND THE APPLICABLE ORDER FORM(S).

(c) CUSTOMER'S SOLE REMEDY UPON BREACH OF THIS AGREEMENT BY MITCHELL THAT MITCHELL 1 IS UNABLE TO CURE AFTER A REASONABLE NOTICE PERIOD SHALL BE TERMINATION OF THE AGREEMENT AND REFUND OF UNEARNED PORTIONS OF THE FEES STATED ON THE ORDER FORM(S).

12. **Equitable Relief.** Notwithstanding any other provision of this Agreement, Customer acknowledges that any breach of its obligations under this Agreement with respect to the Services or Products and any other proprietary rights and confidential information of Mitchell 1 or its Third Party Providers will cause irreparable injury to Mitchell 1 or its third party providers as appropriate for which there are inadequate remedies at law and, therefore, Mitchell 1 or its Third Party Providers shall be entitled to equitable relief in addition to all other remedies provided by this Agreement and the applicable Order Form(s) or available at law.

13. **Indemnification.** Customer agrees to defend, indemnify and hold Mitchell 1 harmless against all claims and damages, including without limitation reasonable attorney's fees arising out of Customer's use of the Services or Products, including but not limited to any Update, unless such claims or damages result from or unless Customer's authorized use of the Services or Products has given rise to claims or damages based on the infringement of any copyright or other proprietary right of any third party. Mitchell 1 shall not be liable to you for interception of CWS data through the Internet by third parties. Mitchell 1 has no control over and not responsible for and will not be liable to you for the actions of Internet systems and service providers or natural disasters that create delays or interruptions of services. Customer acknowledges and agrees that if Customer utilizes any non-Mitchell 1 supplied interface program to interface with the system, Customer shall look solely to the vendor of such interface program with respect to any losses or damages caused by such interface program. Mitchell 1 is not responsible for obsolescence of the system and data updates and shall have no responsibility for suspended, outdated or uncorrected versions of the system and data updates.

14. **Termination.**

(a) Mitchell 1 shall have the right to terminate this Agreement in the event of any of the following: (1) if Customer defaults in the performance of any of Customer's obligations under this Agreement involving the payment of money and the same shall not be cured within ten (10) business days after written notice to Customer; (2) if Customer defaults in the performance of any of Customer's obligations under this Agreement or breaches any restriction imposed on it by this Agreement, and if such default or breach involves performance or restrictions other than the payment of money and Customer shall not commence curing the same within ten (10) business days after written notice to Customer and if such default is not thereafter cured within ninety (90) days or (3) if a receiver is appointed or one or more creditors do take possession of all or substantially all of the assets of Customer, or if Customer shall make a general assignment for the benefit of creditors or if Customer resolves to go into voluntary liquidation.

(b) Notwithstanding the foregoing, Customer acknowledges that certain third party products licensed by Mitchell 1 to Customer under this Agreement may be terminated by Mitchell 1 upon violation of this Agreement by Customer without any opportunity to cure and the following actions by Customer shall constitute a material breach of the Agreement and Mitchell may terminate the Agreement in part or in whole upon notice to Customer without the opportunity to cure: (1) any use or dissemination of the Product or Services that is not expressly permitted in this Agreement, (2) any unauthorized access to or use of the Product or Services by or through Customer, or (3) failure to make timely payment of any Customer Fee. Immediately upon the effective date of termination of this Agreement Customer shall cease using the Product and Services.

(c) Upon termination of this Agreement by Customer for a material breach by Mitchell 1, Mitchell 1 shall refund to Customer the unearned portion of the Customer Fees pro-rated for the remainder of the Subscription Period for Products or Term for Services following the effective date of termination. Upon termination of this Agreement by Mitchell 1 for a breach by Customer, Customer shall not be entitled to any refund of the Customer Fees.

(d) The terms and conditions of Sections 5, 7, 8, 11, 12, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29 and 30 et al survive the termination of this Agreement for any reason.

15. **Effect of Termination.** In the event of the expiration or termination of this Agreement for any reason (a) Customer shall refrain from any and all use of the Services and Products in any manner whatsoever except as otherwise provided in this Agreement, (b) any CWS Web Site and Mitchell 1 Network Number shall immediately be shut down, (c) Customer shall not be relieved of any of its obligations which have accrued on and prior to the date of expiration or termination of this Agreement, (d) Customer shall return the system, data updates and all Mitchell 1 documents and information pertaining thereto, (e) except as set forth in Section 11(c), Customer shall not be entitled to any refund of any payments to Mitchell 1 by Customer, and (f) Customer must immediately return to Mitchell 1 any and all Proprietary Materials.

16. **Assignment.** Mitchell 1 may freely assign its rights hereunder without securing Customer's permission to do so. Customer may not assign its rights or delegate its duties hereunder without first securing written permission from Mitchell 1, which permission may be withheld at the sole discretion of Mitchell 1. For purposes of this Section 17 Customer shall be deemed to have assigned this Agreement if there is, in the aggregate a change of ownership of twenty-five percent (25%) or more of Customer or a merger or combination of Customer with another entity of business whether Customer is the surviving entity or not. Any such attempted assignment shall be void and shall constitute a default entitling Mitchell 1 to terminate this Agreement. Notwithstanding the foregoing, upon payment by Customer of a reasonable transfer fee, this Agreement may be assigned by Customer to a purchaser of all or substantially all of its business upon the prior written consent of Mitchell 1, such consent not to be unreasonably withheld.

17. **Choice of Law and Forum.** This Agreement has been entered into in San Diego, California under the laws of the State of California and Customer and Mitchell 1 agree that it shall be interpreted and all disputes arising hereunder shall be resolved, in accordance with California law. To the extent recourse to a court is allowed hereunder, both Customer and Mitchell 1 agree that jurisdiction of any claim or suit hereunder shall be exclusively the courts located within the County of San Diego California. Both parties hereby submit to the personal jurisdiction of such courts and hereby disclaim the applicability of the Uniform Commercial Code, the Uniform Computer Information Transactions Act and the United Nations Convention on Contracts for the International Sale of Goods.

Signature

End User/Owner Signature ⓧ _____

18. **Arbitration.**

(a) Any dispute, claim or controversy arising out of or relating to this Agreement or breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in San Diego California before a sole arbitrator, in accordance with the laws of the State of California for agreements made in and to be performed in that State. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the award may be entered in any court having jurisdiction.

(b) The arbitrator shall have no authority to amend or modify the terms of this Agreement or to award punitive or consequential, indirect, special or exemplary damages, and the award may be enforced by judgment.

(c) Before, during or after arbitration each party shall have the right, without waiving the outcome of the arbitration, to seek provisional remedies from an appropriate court, including but not limited to temporary restraining orders or preliminary injunctions. Seeking any such remedies shall not be deemed a waiver of either party's right to demand arbitration.

19. **Limitation on Right to Pursue Claims.** ANY CLAIM SHALL BE MADE BY FILING A DEMAND FOR ARBITRATION WITHIN ONE (1) YEAR FOLLOWING THE OCCURRENCE FIRST GIVING RISE TO THE CLAIM.

20. **Attorney's Fees.** If any action or proceeding is brought in connection with this Agreement, the prevailing party shall be entitled to its attorney's fees and other costs and expenses incurred in such action or proceeding, including any appeals or petitions therefore.

21. **Irreparable Harm.** Customer acknowledges and expressly agrees that any breach by it of provisions of the licenses in Section 4 of this Agreement or any of the provisions Section 5, Section 9 and/or cause Mitchell 1 irreparable harm for which damages would not be an adequate remedy. Therefore, Customer agrees that in the event of any breach of the licenses in Section 4 of this Agreement or any of the provisions Section 8 or Section 9, Mitchell 1 will have the right to seek injunctive relief against continuing or further breach by Customer without the necessity of proof of actual damages. The right to seek injunctive relief without necessity of proof of damages will be in addition to any other right that Mitchell 1 may have under this Agreement, or otherwise in law or in equity.

22. **Notice.** Any notice or other communication required or permitted to be given to either party shall be in writing and shall be deemed to have been properly given and to be effective on the date of delivery, if delivered in person, or by facsimile (with electronic confirmation of receipt) and mailing a copy) or five (5) days after mailing by registered or certified mail, postage paid, to the other party at the following addresses, or the address provided to the other party in writing from time to time. In the case of Mitchell 1: 14145 Danielson Street, Poway, CA 92064, Attention: CRM Department Tel: 888-724-6742 (toll free) Fax: 858-391-5262. In the case of Customer the address specified on the Order Form.

23. **Waiver.** No delay or omission by either party hereto to exercise any right occurring upon any noncompliance or default by the other party with respect to any of the terms of this Agreement shall impair any such right or power or be construed to be a waiver thereof. A waiver by either of the parties of any of the covenants, conditions or agreements to be performed by the other shall not be construed to be a waiver of any succeeding breach thereof or of any covenant, condition or agreement herein contained.

24. **Severability.** If any provision of this Agreement or applicable Order Form(s) is found by a court of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability shall not invalidate or render unenforceable any other part of this Agreement or applicable Order Form(s), but the Agreement or applicable Order Form(s) shall be construed as not containing the particular provision or provisions held to be invalid or unenforceable.

25. **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. The Section 26 shall not be construed to alter or modify the prohibitions upon assignments or transfers by Customer expressed elsewhere in this Agreement.

26. **Force Majeure.** Mitchell 1 will not be liable for or be considered to be in breach of or default under this Agreement on account of any delay or failure to perform as required by this Agreement as a result of any cause or condition beyond its reasonable control. Mitchell 1 may suspend or terminate provision of any Services or Products as a result of any such cause or condition.

27. **Counterparts; Facsimile Signatures.** This Agreement and the applicable Order Forms may be executed in one or more duplicate originals, all of which together shall be deemed one and the same instrument. This Agreement and the applicable Order Form(s) may be executed and transmitted through facsimile signatures, with originals to follow by regular mail or overnight courier.

28. **Entire Agreement.** This Agreement and the applicable Order Form(s) sets forth the entire, final and exclusive agreement between Customer and Mitchell 1 as to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, between the parties. This Agreement may be modified only pursuant to a writing executed by authorized representatives of Customer and Mitchell 1.

29. **Export Laws.** Customer shall not export, re-export, disclose or distribute the Services or Products in violation of any applicable laws or regulations, including the export laws and regulations of the United States, and shall comply with all such laws and regulations.

30. **Complimentary Products.** If Customer has received complimentary products, Sections 7 and 11(c) shall not apply to the complimentary products except the definition of any term in the applicable Section shall remain in effect to the extent such term is used in an applicable Section. Customer shall not receive Services with complimentary products. This Agreement and Mitchell 1's sole liability to Customer in respect of the complimentary products, CUSTOMER'S SOLE REMEDY UPON BREACH OF THIS AGREEMENT BY MITCHELL 1 SHALL BE TERMINATION OF THIS AGREEMENT AND DAMAGES NOT TO EXCEED $1. This Agreement as to the complimentary products may be terminated by either party at any time upon written notice. Mitchell 1 shall further have the right to terminate this Agreement as to the complimentary products by ceasing Customer access to the complimentary products at its sole discretion.

EXHIBIT 2
42