1  KENNETH A. KUWAYTI (CA SBN 145384)
   Kuwayti@mofo.com
2  BERKELEY G. FIFE (CA SBN 325293)
   BFife@mofo.com
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, California 94304-1018
   Telephone: 650.813.5600
5
6  JOHN R. LANHAM (CA SBN 289382)
   JLanham@mofo.com
7  JANET S. KIM (CA SBN 313815)
   JKim@mofo.com
8  MORRISON & FOERSTER LLP
   12531 High Bluff Drive
9  San Diego, California 92130-2040
   Telephone: 858.720.5100

10 *Attorneys for Plaintiffs*
   MITCHELL REPAIR INFORMATION
11 COMPANY, LLC and SNAP-ON
   INCORPORATED
12

13              **IN THE UNITED STATES DISTRICT COURT**
14              **SOUTHERN DISTRICT OF CALIFORNIA**

15 MITCHELL REPAIR INFORMATION      | Case No. 3:21-cv-01339-CAB-BGS
   COMPANY, LLC, a Delaware limited |
16 liability company, and SNAP-ON   |
   INCORPORATED, a Delaware         | **PLAINTIFFS' OPPOSITION TO**
17 corporation,                     | **AUTEL'S MOTION TO COMPEL**
                                    | **ARBITRATION AND STAY**
18              Plaintiffs,          | **PROCEEDINGS**
19       v.
                                    | Date:  October 7, 2021
20 AUTEL. US INC., a New York        | Time:  2:00 p.m.
   corporation, and AUTEL INTELLIGENT| Courtroom:  15A
21 TECHNOLOGY CORP., LTD., a         |
   Chinese corporation,             | Judge:  Hon. Cathy Ann Bencivengo
22
               Defendants.          | **Jury Trial Demanded**
23
24
25
26 ████████████████████████████████
27 ████████████████████████████████
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

    A.    Autel ITC and Autel US Stole Data from Three Separate Products in Different Ways ............................................................................... 2

         1.    Snap-on Handheld Diagnostic Units ............................................... 2

         2.    Mitchell 1's TruckSeries Product ..................................................... 3

         3.    Mitchell 1's ProDemand Product ..................................................... 4

    B.    The ProDemand EULA and Arbitration Clause ..................................... 4

    C.    Plaintiffs File Suit and Seek a Preliminary Injunction........................... 5

    D.    Autel Stipulates To Temporary Injunctive Relief, Preliminary Injunction Briefing, and Expedited Discovery ..................................... 5

    E.    Despite Many Gaps, Initial Discovery Has Confirmed Autel's Data Theft And Uncovered New Wrongdoing.................................................. 6

III.  THERE IS NO AGREEMENT TO ARBITRATE CLAIMS AGAINST AUTEL ITC, OR CLAIMS BASED ON SNAP-ON'S DIAGNOSTIC TOOLS OR TRUCKSERIES ................................................................................. 8

    A.    There Is No Arbitration Agreement Involving Autel ITC, Snap-on, or the Diagnostic Device or TruckSeries Products ................................. 8

    B.    Autel Fails to Establish that Claims Involving Autel ITC Are Subject to Arbitration.............................................................................. 9

         1.    The claims against Autel ITC based on Snap-on diagnostics and TruckSeries are not intimately founded in or intertwined with the ProDemand EULA............................................................. 10

         2.    The Four Claims Against Autel ITC Relating to ProDemand Are Not Arbitrable ............................................................................ 13

    C.    The Claims Against Autel US Relating to Snap-on Diagnostic Devices and TruckSeries are Not Arbitrable ............................................ 14

    D.    Plaintiffs Agree To Arbitrate The Claims Against Autel US Relating to ProDemand And To Stay Those Claims Once The Court Has Resolved The Preliminary Injunction...................................... 15

    E.    Snap-on's Claims Are Not Arbitrable....................................................... 15

IV.  THE COURT SHOULD NOT STAY NONARBITRABLE CLAIMS............. 16

V.    THIS COURT IS THE CORRECT FORUM FOR PRELIMINARY
      INJUNCTIVE RELIEF ....................................................................................... 19

      A.    The Arbitration Provision States Parties "Shall Have the Right" to
            Seek Preliminary Relief From This Court "Before, During, or After
            Arbitration" .............................................................................................. 19

      B.    Plaintiffs Would Have The Right To Seek Preliminary Injunctive
            Relief Even Without A Contractual Provision ......................................... 22

      C.    The Court Has the Power to Order Discovery ......................................... 23

      D.    The Court Should Hold Autel To Its Stipulation .................................... 23

sf-4578118

# TABLE OF AUTHORITIES

**Page(s)**

*Blair v. Rent-A-Ctr., Inc.*,
  928 F.3d 819 (9th Cir. 2019) ....................................................................... 17

*Burrola v. U.S. Sec. Assocs., Inc.*,
  No. 3:18-cv-00594-BEN-JLB, 2019 WL 482491 (S.D. Cal. Feb. 7,
  2019) ............................................................................................................ 17

*Carefusions Corp. v. Clinical Tech., Inc.*,
  2013 WL 12108117 (S.D. Cal. Aug. 29, 2013) ........................................... 17

*Chelsea Fam. Pharm., PLLC v. Medco Health Sols., Inc.*,
  567 F.3d 1191 (10th Cir. 2009) ................................................................... 10

*Chen v. Bank of Am., N.A.*,
  2020 WL 4561658 (C.D. Cal. Mar. 31, 2020) ............................................ 19

*Chin v. Boehringer Ingelham Pharms., Inc.*
  2017 WL 3977381 (N.D. Cal. Sept. 11, 2017) ............................................ 21

*Cinedigm Corp. v. Gaiam Inc.*,
  2015 WL 2084590 (C.D. Cal. May 5, 2015) .......................................... 20, 21

*Cisco Sys., Inc. v. Wilson Chung*,
  462 F. Supp. 3d. 1024 (N.D. Cal. 2020) ................................................. 19, 22

*Clouser v. Ion Beam Applications, Inc.*,
  2004 WL 540514 (N.D. Cal. Mar. 18, 2004) .......................................... 19, 21

*Comedy Club, Inc. v. Improv W. Assocs.*,
  553 F.3d 1277 (9th Cir. 2009) ....................................................................... 8

*Cullen v. Shutterfly Lifetouch, LLC*,
  2021 WL 2000247 (N.D. Cal. May 19, 2021) ............................................. 15

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) .................................................................................. 8, 19

*Fridman v. Uber Techs., Inc.*,
  2019 WL 1385887 (N.D. Cal. Mar. 27, 2019) ............................................ 18

*Gaines v. Fid. Nat'l Title Ins. Co.*,
    62 Cal. 4th 1091 (2016) ................................................................................ 9

*General Motors L.L.C. v. Autel US Inc.*,
    No. 14-14864 (E.D. Mich.) ........................................................................... 7

*Genoptix, Inc. v. Dabbas*,
    2017 WL 4541755 (S.D. Cal. Oct. 11, 2017) ............................................. 14

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) ...................................................................................... 8

*Jensen v. U-Haul Co. of Cal.*,
    18 Cal. App. 5th 295 (2017) ....................................................................... 16

*Jope v. Bear Stearns & Co.*,
    632 F. Supp. 140 (N.D. Cal. 1985) ............................................................ 17

*In re Affordable Hous. Dev. Corp.*,
    175 B.R. 324 (B.A.P. 9th Cir. 1994) .......................................................... 20

*Kramer v. Del Real*,
    705 F.3d 1122 (9th Cir. 2013) .................................................................... 10

*Matthau v. Super. Ct.*,
    151 Cal. App. 4th 593 (2007) ..................................................................... 16

*Metalclad Corp. v. Ventana Env't Organizational P'ship*,
    1 Cal. Rptr. 3d 328 (2003) ......................................................................... 10

*Mohamed v. Uber Technologies, Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .................................................................... 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................................ 17

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ........................................................... 9, 10, 16

*Namisnak v. Uber Techs., Inc.*,
    971 F.3d 1088 (9th Cir. 2020) .................................................................... 15

*NAVEX Global, Inc. v. Stockwell*,
    Case, 2019 WL 6312558 (D. Idaho Nov. 25, 2019) .............................. 20, 21

*Norcia v. Samsung Telcomms. Am., LLC*,
 845 F.3d 1279 (9th Cir. 2017) ........................................................................ 16

*Performance Excavators, Inc. v. Arch Ins. Co.*,
 2008 WL 298826 (E.D. Cal. Feb. 1, 2008) ..................................................... 18

*Philips N. Am. LLC v. Advanced Imaging Servs.*,
 2021 WL 2593291 (E.D. Cal. June 24, 2021) ................................................. 23

*QED Holdings, LLC v. Block*,
 2015 WL 12659935 (C.D. Cal. June 11, 2015) ............................................... 11

*Radcliff v. San Diego Gas & Elec. Co.*,
 2020 WL 6395677 (S.D. Cal. Nov. 2, 2020) ................................................... 17

*Rahmany v. T-Mobile USA Inc.*,
 717 F. App'x. 752 (9th Cir. 2018) (unpublished) ........................................... 11

*Robbins Co. v. JCM Northlink LLC*,
 2016 WL 4193864 (W.D. Wash. Aug. 9, 2016) ............................................. 22

*Sci. 37 v. Domo, Inc.*,
 2019 WL 11073307 (C.D. Cal. July 3, 2019) ................................................. 21

*Stewart v. Preston Pipeline Inc.*,
 134 Cal. App. 4th 1565 (2005) ........................................................................ 24

*Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*,
 609 F.3d 975 (9th Cir. 2010) .................................................................... 20, 23

*Trujillo v. Lewis*
 2014 WL 4832216 (N.D. Cal. Sept. 29, 2014) ............................................... 23

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
 46 Fed. Appx. 412 (9th Cir. 2002) (unpublished) .......................................... 17

*Whole Body Rsch., LLC v. Dig. MD, LLC*,
 WL 3830902 (C.D. Cal. July 3, 2018) ..................................................... 15, 19

*Yau v. St. Francis Mem'l Hosp.*,
 2013 WL 6326555 (N.D. Cal. Dec. 4, 2013) .................................................. 17

OPP. TO AUTEL'S MOTION TO COMPEL ARBITRATION & STAY
CASE NO. 3:21-cv-01339-CAB-BGS

**Statutes**

Cal. Civ. Code
§ 1638 ................................................................................................................. 19

California Penal Code
§ 502(c) .................................................................................................. 12, 14, 15

Wisconsin Statute
§ 943.70(2)(a)(3) .................................................................................... 12, 14
§ 943.70(2)(a)(4) .................................................................................... 12
§ 943.70(2)(a)(5) .................................................................................... 12
§ 943.70(2)(a)(6) .................................................................................... 14, 15

sf-4578118

## I.    INTRODUCTION

Snap-on and Mitchell 1 filed this action and moved for preliminary injunctive relief to stop the blatant, ongoing theft of their proprietary data by China-based competitor Autel ITC and its subsidiary Autel US.  This is the proper forum for Plaintiffs' claims, and the ***only*** forum where all of the claims could have been brought.

Autel ITC and Autel US stole data from three separate products: Snap-on's handheld diagnostic tools, Mitchell 1's ProDemand web-based subscription service for automotive vehicles, and Mitchell 1's TruckSeries web-based subscription service for commercial trucks.  Plaintiffs' Complaint explains how these products were developed and the differences between them in detail.  (*See* Doc. No. 1 ¶¶ 25-120.)  Experts, engineers, and editors, aided by customized artificial intelligence software, have spent hundreds of person-years developing these products from an incomparable database of billions of repair records gathered over 25 years.  (*See id.* ¶¶ 64-71.)

Each of the three products is subject to its own EULA.  The EULA for Snap-on's diagnostic devices has no arbitration clause, and Defendants did not have a TruckSeries subscription.  Defendants try to shoehorn this entire case into arbitration based on the EULA that Autel US signed for Mitchell 1's ProDemand product.  But Plaintiffs never agreed to arbitrate anything with Autel ITC, and Defendants' theft of data from Snap-on devices and TruckSeries has nothing to do with the ProDemand EULA.  Moreover, to protect Mitchell 1 from this exact scenario, the ProDemand EULA's arbitration clause plainly states, in mandatory terms, that Mitchell 1 "shall have the right" to seek preliminary injunctive relief in this Court, "before, during, or after" arbitration.  (*Id.* Doc. No. 1-4 at ¶ 18(c).)

Autel falls far short of establishing that equitable estoppel requires bringing this entire litigation to a halt.  The claims for misuse of other products or involving nonsignatories Autel ITC and Snap-on are not arbitrable because they do not rely upon the ProDemand EULA, and are not intimately founded in and intertwined with it.  Nor can Autel meet its burden for entitlement to a stay.  As the Ninth Circuit has stated,

even if some claims go to arbitration, it is preferable to allow all other claims in a litigation to proceed.  Here, there would be almost no benefit to a stay given the minimal overlap with any arbitrable issues.  But a stay would be hugely prejudicial to Plaintiffs.  Initial discovery is far from complete, but has confirmed the massive and systematic theft of Plaintiffs' proprietary data, nearly all of which was taken to China.  This includes scraping data up until right before this case was filed, and even more egregious, apparently downloading data through September 15, in violation of the TRO.  Plaintiffs require the protection of this Court, and the full scope of discovery it allows, to pursue their claims.  Autel evidently hopes that by throwing this case into arbitration under the JAMS Streamlined Rules, it can limit further damaging discovery.

Given the clear language of the arbitration clause, Autel also has no basis for derailing the preliminary injunction process.  That is particularly true since Autel itself proposed and stipulated to an order setting the preliminary injunction schedule and discovery.  Autel now claims its counsel did not read the arbitration clause in the ProDemand EULA that Autel US signed, and that was attached to the Complaint—despite Autel's contention now that all of the claims in this case are centered on it.  It appears that Autel has buyer's remorse.  Plaintiffs relied on Autel's representations in the stipulation and the Court should enforce it.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Autel ITC and Autel US Stole Data from Three Separate Products in Different Ways

As the Complaint alleges, Autel ITC and Autel US stole information from Snap-on and Mitchell 1 "by improperly syphoning data from three separate products, in at least three different ways." (Doc. No. 1 ¶ 5.)

#### 1.    Snap-on Handheld Diagnostic Units

Snap-on designs and sells sophisticated handheld diagnostic computers, including the ZEUS™ device, which retails for nearly $10,000.  (Doc. No. 11-3 ¶ 29.) The ZEUS device is designed to be plugged into a vehicle, where it can read a

vehicle's trouble codes and receive a variety of cloud-hosted categories of trouble-code specific proprietary repair and diagnostic information in response.  (*See* Doc. No. 1 ¶¶ 37-48.)   Snap-on's diagnostic devices are subject to an electronic EULA.   (*See id.* ¶¶ 176-78).  ***The Snap-on EULA has no arbitration provision***.  (*See* Doc. No. 1-8.)

The predominant wrongful activity alleged in this case is Autel's illegal circumvention of the Snap-on device security measures to steal proprietary data, including by fraudulently activating over 1,000 device serial numbers, and then "spoofing" over 400 devices to submit data requests.  (*See, e.g.,* Doc. No. 1 ¶¶ 78-82, 99-106, 123-25; Doc. No. 11-2 ¶¶ 11, 25, 26a-g, 30-73; Doc. No. 11-1 ¶¶ 8-17.) Plaintiffs presented forensic evidence that Autel ITC and Autel US made over *5.6 million* requests for proprietary data through the spoofed devices over a period of many months, and there was evidence of millions of significant additional attacks although logs no longer existed for much of the relevant time period. (*See, e.g.,* Doc. No. 1 ¶¶ 90-94; Doc. No. 11-2 ¶¶ 26g, 30-47, 53-64).  The vast majority of attacks came from Autel ITC in China.  (*See, e.g.,* Doc. No. 11-2 ¶¶ 19, 22, 26c, 29, 67.)  Autel ITC concedes it engaged in "programmatic access" of Snap-on devices, while Autel US claims only "manual, normal user access."  (Kuwayti Decl. Ex. 1 at 6, 8-13, 16-18.)

### 2.    Mitchell 1's TruckSeries Product

Mitchell 1's TruckSeries product is a web-based subscription service providing diagnostic and repair information for commercial trucks.  (Doc. No. 1 ¶¶ 53-63.)

All TruckSeries users must have an active paid subscription—that is separate from ProDemand—along with user credentials tied to that subscription.  The use of TruckSeries is governed by the same terms as the ProDemand EULA, but neither Defendant has a subscription to TruckSeries.  (*See id.* ¶ 110; Doc. No. 11 ¶ 22.) Instead, Autel ITC and Autel US were secretly accessing TruckSeries and downloading data through an account issued to Tom Machine and Equipment Repair ("Tom Machine").  (*See* Doc. No. 1 ¶¶ 110-113; Doc. No. 11-2 ¶¶ 26j, 82-85.)

### 3.    Mitchell 1's ProDemand Product

ProDemand is a web-based subscription service for light vehicles.  It requires its own paid subscription, even for users who already have a Snap-on diagnostic device.  (Doc. No. 1 ¶ 49.)   It offers some of the same categories of proprietary information that are provided through the Snap-on device, but also organizes and displays repair information from vehicle manufacturers ("OEMs").  Mitchell 1 pays significant license fees for this OEM data.  It has spent years organizing the data, creating a consistent taxonomy for it, and keeping it current.  (*Id.* ¶¶ 50-51).

Autel ITC and Autel US have been systematically scraping data from ProDemand since at least October 1, 2020, with Autel ITC using the credentials of Autel US.  (*Id.* ¶ 108-09.)  At the time of the Complaint, Plaintiffs determined that Autel had targeted thousands of ProDemand entries.  (*Id.*)

Autel ITC has now admitted that it has also been taking ProDemand data through an account registered under the name of another company, Gerhard's Foreign Car Repair ("Gerhard's"), since October 2020.  And, as discussed below, ***it appears Autel ITC has continued to take data through that account in violation of the TRO.***

### B.    The ProDemand EULA and Arbitration Clause

In January 2016, Autel US signed the order form and EULA for Mitchell 1's ProDemand product.  (Doc. No. 1 ¶ 19; Doc. Nos. 1-3, 1-4.)  In December 2020, Autel US signed another order form adding seats to its ProDemand license.  (Doc. No. 1 ¶ 20; Doc. Nos. 1-5, 1-6.)  These EULAs were for the ProDemand product only.  (*See* Doc. No. 1-1 at 1 (selecting ProDemand product);  Doc. No. 1-3 at 1 (same); Doc. No. 1-2 ¶ 3 ("The only Services offered by Mitchell 1 are listed on the Order Form and if selected by Customer are subject to the terms of this Agreement").)  Autel ITC has never had a ProDemand license.  (Doc. No. 1 ¶ 107.)

The arbitration clause in the ProDemand EULA provides that:

> ***Before, during, or after arbitration each party shall have the right, without awaiting the outcome of the arbitration,*** to seek provisional remedies from an appropriate court ***including but***

***not limited to temporary restraining orders or preliminary injunctions***.

(Doc. No. 1-4, ¶ 18(c) (emphasis added).)  The agreement assigns exclusive jurisdiction to courts in San Diego County for such actions.  (*Id*. ¶ 17.)  Paragraphs 12 and 21 of the ProDemand EULA underscore the importance of injunctive relief and state Mitchell 1 would suffer "irreparable" harm from breaches of its confidentiality or proprietary rights and may seek injunctive relief.  (*Id*. ¶¶ 12, 21.)

### C.     Plaintiffs File Suit and Seek a Preliminary Injunction

Plaintiffs filed this action on July 27, 2021.  The next day, Plaintiffs filed for a TRO and expedited discovery (Doc. Nos. 6, 7).  The Court set a schedule for the motion, requiring Defendants to file any opposition by August 6.  (Doc. No. 10.)

Autel repeatedly, but incorrectly, insinuates that Plaintiffs used the ProDemand EULA to establish jurisdiction and venue for the entire action.  (*See, e.g.,* Doc. No. 31 at 7, 11.)  But this is not true.  The Complaint cites to the ProDemand EULA for venue solely for Mitchell 1's breach of contract claim against Autel US and only "for the purposes of determining Plaintiff Mitchell 1's ***entitlement to preliminary relief*** for that claim." (Doc. No. 1 ¶ 21 (emphasis added).)  This was consistent with the arbitration clause.  Plaintiffs based personal jurisdiction and venue more broadly on Autel's illegal conduct targeting and causing injury to Plaintiffs in this District, including accessing proprietary information hosted on servers located here.  (*Id.* ¶¶ 18, 24.)

### D.     Autel Stipulates To Temporary Injunctive Relief, Preliminary Injunction Briefing, and Expedited Discovery

Autel's outside counsel proposed the idea of stipulating to a TRO, providing discovery, and having Autel ITC stipulate to personal jurisdiction, if Plaintiffs would agree to a more extended discovery and preliminary injunction schedule and agree to narrow the language of its TRO.  (Kuwayti Decl. ¶ 9 and Ex. 2.)  The parties filed a stipulation on August 6, which the Court entered as an order on August 9. (Doc. Nos. 18, 19.)  The stipulation is discussed in more detail in section V.D. below.  At Autel's

insistence, Plaintiffs agreed to include a provision stating that general discovery in this litigation would be open.  (Kuwayti Decl. ¶ 11 and Doc. No. 19 ¶ 8.)

Autel claims that its lead counsel was unaware of the arbitration clause at the time Autel signed the stipulation, despite the fact that the ProDemand EULA was attached as Exhibits 1 and 2 to the Complaint, and Exhibits 2 and 3 to the TRO briefing, because he didn't have sufficient time to read the contract.  (*See* Doc. No. 31 at 22, Doc. No. 31-3.)  The first time Autel ever made this claim was on September 17, the day it filed this motion.  As explained below, this claim rings hollow.  Autel's counsel notably never claims that its client, Autel US, was unaware of the terms of the agreement that it signed, and the motion is conspicuously silent on when Autel US and the other members of Autel's legal team learned of the arbitration clause.

Perhaps more telling, though, is that on August 27, ***30 days*** after the Complaint was filed, Autel served wide-ranging Requests for Production, Interrogatories, and Deposition Notices on both Snap-on and Mitchell 1.  (*See* Kuwayti Decl. Exs. 3-6.) Autel can hardly claim it was unaware of the arbitration provision by then.  What happened here is clear: Autel regrets entering into the stipulation and changed its mind.

### E.   Despite Many Gaps, Initial Discovery Has Confirmed Autel's Data Theft And Uncovered New Wrongdoing

Autel's interrogatory responses admit—and forensic discovery confirms—that Autel created and ran software programs to scrape data from Snap-on's diagnostic devices and ProDemand.  (*See* Kuwayti Decl. Ex. 1 at 12-14; Roffman Decl. ¶ 9(a).)

The TRO required Autel ITC and Autel US to permit forensic inspection of any Snap-on handheld devices they possessed, and devices used to improperly access, download, and store Plaintiffs' data.  (Doc. No. 19 ¶ 4.) As a result, Autel ITC produced 13 ZEUS device, eight computers, and two other Snap-on handheld devices and Autel US produced two laptops.  (Roffman Decl. ¶¶ 4-5.)  A vendor in China is reviewing Autel ITC's devices, but only a high level summary of that data has been shared with Plaintiffs' counsel and expert because Chinese counsel is reviewing it first.

OPP. TO AUTEL'S MOTION TO COMPEL ARBITRATION & STAY
CASE NO. 3:21-cv-01339-CAB-BGS

sf-4578118

Still, the evidence confirms that injunctive relief, and the Court's continued involvement, is essential in this case.  Autel and Autel ITC have downloaded extensive amounts of Plaintiffs' proprietary data, including nearly 320,000 specially-created interactive wiring diagrams from ProDemand.  (*Id*. ¶ 9(b)i.)  Autel also lists 1,119 serial numbers for Snap-on devices that were 'generated" for the purpose of taking Plaintiffs data.  (*See* Kuwayti Decl. Ex. 1 at 23-34.) Autel has also admitted to secretly accessing TruckSeries through the Tom Machine account, and its devices contain folders of TruckSeries data.  (*See id.* at 11; Roffman Decl. ¶ 9(c).)

Autel ITC now admits it also secretly downloaded ProDemand data through an account opened for Gerhard's with username ProDemand2020.  (Kuwayti Decl. Ex. 1 at 11-12.)  The account's activity spiked in July and August 2021, mostly after Mitchell 1 terminated Autel US' ProDemand account on July 15.  (Roffman Decl. ¶ 9(e)i.)  It appears Autel ITC continued to access ProDemand data through this account until at least September 15, 2021.  (*Id.* ¶ 9(e)(i)-(ii); Kuwayti Decl. Ex. 1 at 11-12.)  ***This would be a violation of the TRO***, which specifically prohibited Autel from accessing ProDemand or Plaintiffs' data servers.  (*See* Doc. No. 19 ¶ 1b).

Forensic review also confirms Autel's willingness to engage in continued bad acts.  Autel created code to scrape ProDemand data in June and July of 2021—right before Plaintiffs filed suit—along with thousands more ProDemand data files.  (*See* Roffman Decl. ¶ 9(b)ii.)  The review also found software programs to scrape data from Volvo and Bolt On, a Snap-on partner that provides shop management software.  (*See id.* ¶ 9(d).)  And it revealed a program Autel used to scrape data from GM, despite being previously sued by GM for similar misconduct.  *See id.*; *General Motors L.L.C. v. Autel US Inc.*, No. 14-14864 (E.D. Mich.).

But this is just the tip of the iceberg.  The devices appear to contain only Snap-on device data downloaded over a 15-day period in November 2020, while Plaintiffs know the data theft lasted far longer.  (*See id.* ¶ 9(a)i.)  None of the data from the Chinese devices has been delivered to the U.S. for analysis; there has been no email

OPP. TO AUTEL'S MOTION TO COMPEL ARBITRATION & STAY
CASE NO. 3:21-cv-01339-CAB-BGS

discovery; and two computers and as many as 70 USB drives that were plugged into the ZEUS devices and computers in China have yet to be turned in for inspection. (Kuwayti Decl. ¶ 19; Roffman Decl. ¶ 9(f).)  Crucially, Autel has provided only cursory discovery as to how it is using the data.  (*See* Roffman Decl. ¶ 9(f)i.)  Its responses only vaguely describe the use Autel made of the data and are incomplete or untrue.  They do not for example, list any of the Gerhard's account activity after November 13, 2020, or the scraping of ProDemand data in July 2021.  (*See* Kuwayti Decl. Ex. 1 at 12.)  Autel also claims that it only used TruckSeries "to view repair information in order to assist Autel US customers with technical issues regarding their vehicles." (*Id*. at 11.)  As bad as it would be for a competitor to secretly use Mitchell 1's data for its own commercial purposes, the explanation is clearly false.  Forensic evidence shows TruckSeries usage clearly not intended for vehicle repair—including 472 printouts between July 7-12, 2021.  (Doc. No. 11-2 ¶¶ 26(i)-(j), 82-89.)

### III.   THERE IS NO AGREEMENT TO ARBITRATE CLAIMS AGAINST AUTEL ITC, OR CLAIMS BASED ON SNAP-ON'S DIAGNOSTIC TOOLS OR TRUCKSERIES

It is axiomatic that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).  The federal policy favoring arbitration does not override this rule, and courts may not use policy considerations as a substitute for party agreement. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010).

Autel acknowledges the Court decides "whether a valid agreement to arbitrate exists."  (Doc. No. 31 at 15); *see also Granite Rock*, 514 U.S. at 296 ("where the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").  The policy favoring arbitration does not extend to nonsignatories. *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009).

### A.   There Is No Arbitration Agreement Involving Autel ITC, Snap-on, or the Diagnostic Device or TruckSeries Products

Autel concedes neither Autel ITC nor Snap-on has entered any agreement with

OPP. TO AUTEL'S MOTION TO COMPEL ARBITRATION & STAY
CASE NO. 3:21-cv-01339-CAB-BGS

an arbitration clause.  (*See* Doc No. 31 at 13-15.)  They have agreed to only the Snap-on device EULA, which has no arbitration clause.  (*See* Doc. No. 1-8 (Ex. 6).)

There is also no valid arbitration clause between any of the parties as to TruckSeries.  Autel concedes that the EULA signed by Autel US is for the ProDemand product only.  (*See, e.g.,* Doc No. 31 at 9.)  ProDemand and TruckSeries are entirely different products, requiring different licenses.  Neither Autel US nor Autel ITC has an account to TruckSeries.  (*See* Doc. No. 1 ¶ 110; Doc. No. 11-3 ¶¶ 22, 51.)

### B.    Autel Fails to Establish that Claims Involving Autel ITC Are Subject to Arbitration

Because Autel ITC never executed an arbitration agreement, Autel attempts to use the doctrine of equitable estoppel. It bears the burden of proof.  *Gaines v. Fid. Nat'l Title Ins. Co.*, 62 Cal. 4th 1091, 1097 (2016).

The estoppel test applied by the Ninth Circuit applying California law is "narrowly confined" and applies only "under two very specific conditions":

(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and

(2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (citations omitted).

The rationale for equitable estoppel is that a plaintiff cannot, "'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.* (quoting *Goldman v. KPMG LLP,* 173 Cal. App. 4th 209, 220 (2009)).

Autel cannot meet this high bar.  Plaintiffs do not seek to hold Autel ITC liable based upon the ProDemand EULA.  And the claims involving either Autel ITC or Snap-on are not "intimately founded in or intimately connected with" the ProDemand

EULA.  The fact that Autel ITC and Autel US engaged in a scheme to steal Plaintiffs' data is insufficient.  Even where a plaintiff alleges collusion, "'[t]he *sine qua non*'" for 'equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause." *Id.* at 1232 (quoting *Goldman*, 173 Cal. App. 4th at 223 (internal alteration and quotation marks omitted).)

Moreover, Autel's attempt to rely on the corporate relationship between Autel US and Autel ITC, for which it cites New York law (Doc. No. 31 at 16), is inconsistent with the estoppel standard in California.  Ninth Circuit precedent and settled California law confirms that the focus for estoppel is on whether Plaintiffs "'must rely on the terms of the written agreement in asserting [their] claims' against the nonsignatory," and does not turn on the corporate relationship between the non-signatory and signatory parties.  *Kramer v. Del Real*, 705 F.3d 1122, 1129 (9th Cir. 2013) (quoting *Goldman*, 173 Cal. App. 4th at 218).  The California case Autel cites uses the same "intimately founded in and intertwined with" estoppel analysis.  *See Metalclad Corp. v. Ventana Env't Organizational P'ship*, 1 Cal. Rptr. 3d 328, 334 (2003).

### 1. The claims against Autel ITC based on Snap-on diagnostics and TruckSeries are not intimately founded in or intertwined with the ProDemand EULA

Plaintiffs assert numerous claims for Autel ITC's and Autel US's misconduct in connection with Snap-on devices and TruckSeries.  As discussed below, these claims do not rely on the ProDemand EULA and are not "intimately intertwined" with it.

Defendants appear to be arguing that because, in some cases, these claims are grouped within the same cause of action as claims relating to ProDemand, they have now become arbitrable.  But this form over substance argument is not the law and does not render arbitrable claims that the parties never agreed to arbitrate.  *Chelsea Fam. Pharm., PLLC v. Medco Health Sols., Inc.,* 567 F.3d 1191, 1197 (10th Cir. 2009) ("In order to determine whether a claim is arbitrable under the FAA, we evaluate the factual

OPP. TO AUTEL'S MOTION TO COMPEL ARBITRATION & STAY
CASE NO. 3:21-cv-01339-CAB-BGS

underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action it contains."); *see also QED Holdings, LLC v. Block*, 2015 WL 12659935 at *7 (C.D. Cal. June 11, 2015) ("the Court must examine the factual allegations rather than the legal causes of action to determine whether a claim falls within the scope of the arbitration provision").

**First Cause of Action ("COA"): Violations of DMCA.**  Plaintiffs' DMCA cause of action for violation of section 1201(a)(1)(A) illustrates how Plaintiffs separately pled claims that are grouped together under larger causes of action. Plaintiffs allege that Autel US and Autel ITC circumvented the access control measures in Snap-on's devices.  (Doc. No. 1 ¶¶ 122-126.)  These allegations describe the security measures that apply to the devices (*id*. at ¶¶ 123-24), and how Autel US and Autel ITC spoofed multiple devices to circumvent them. (*Id*. at ¶ 125).

Autel US and Autel ITC also circumvented Mitchell 1's technological measures to gain access to TruckSeries.  (*Id.* ¶¶ 127-131.)  The Truck Series security measures include a subscription with a user name and password. (*Id.* ¶ 128.)  Autel US and Autel ITC accessed TruckSeries through the account registered to Tom Machine. (*Id*. ¶ 130.) The Complaint also alleges that Autel US and Autel ITC conspired to breach section 1201(a)(1)(A) with respect to Snap-on's devices and TruckSeries,  (*Id.* ¶ 132.)

While the Complaint refers to the "ProDemand EULA that applies to TruckSeries (as well as ProDemand)" (*id.* ¶ 131), neither Defendant had a TruckSeries subscription, and Autel's motion does not seek to compel arbitration based on the TruckSeries EULA.   Autel references TruckSeries only once, quoting an allegation from the Complaint stating TruckSeries requires its own EULA.  (Doc. No. 31 at 9.)

These DMCA claims have nothing to do with ProDemand.  They concern the circumvention of the security measures of the Snap-on devices and TruckSeries to gain access to copyrighted works through those products, not ProDemand.  *Rahmany v. T-Mobile USA Inc.*, 717 F. App'x. 752, 753 (9th Cir. 2018) (unpublished) (estoppel is

1   inapplicable where a plaintiff's "'allegations reveal no claim of any violation of any

2   duty, obligation, term or condition imposed by the [contract]'") (citation omitted).

3       Mitchell 1 also asserts a DMCA claim against Autel ITC for circumventing

4   ProDemand's security measures.  (*Id.* ¶¶ 133-135.)  But as explained in section III.B.2.

5   below, that claim does not rely upon the ProDemand EULA.

6       **Second COA: Violation of CFAA.**  Plaintiffs have claims against both Autel

7   US and Autel ITC under the CFAA based on the unauthorized access to the Snap-on

8   devices (*id.* ¶¶ 141-143, 145-146) and to TruckSeries  (*id.* ¶¶ 144, 147).  These claims

9   do not rely on, or even reference, the ProDemand EULA.

10      **Third COA: California Penal Code 502(c).**  Plaintiffs assert claims for (1)

11  violation of § 502(c)(7) and § 502(c)(1), based on Autel US's and Autel ITC's

12  spoofing of Snap-on devices (*Id.*  ¶¶ 154-155, 158, 161); (2) violation of § 502(c)(7)

13  and § 502(c)(1), based on Autel US and Autel ITC obtaining fraudulent access to a

14  Tom Machine account for the TruckSeries product (*id.*  ¶¶ 154, 156, 158, 161); and (3)

15  violation of § 502(c)(5) for disruption of computer services caused by Autel US and

16  Autel ITC's spoofing of Snap-on devices.  (*Id.* ¶ 159.)  Again, none of these claims on

17  the ProDemand EULA and are not "intimately connected" with it.

18      **Fourth COA: Wisconsin Computer Crimes Act.**  As with the 502(c) claims

19  above, Plaintiffs assert claims that do not involve Autel US's ProDemand EULA or

20  ProDemand: (1) violation of § 943.70(2)(a)(3) based on Autel US's and Autel ITC's

21  unauthorized use of Snap-on devices and TruckSeries (*id.* ¶¶ 167-169, 172) and (2)

22  violation of §§ 943.70(2)(a)(4) and (a)(5) based on Autel US's and Autel ITC's

23  unauthorized access of data from Snap-on devices and TruckSeries (*id.* ¶¶ 171, 172).

24      **Fifth COA: Breach of Snap-on EULA.**  In this claim Snap-on alleges Autel

25  US and Autel ITC breached the terms of the Snap-on EULA that apply to Snap-on's

26  handheld devices.  (*See id.* ¶¶ 175-185.)  The Snap-on EULA has no arbitration clause.

27  (*See* Dkt 1-8.)  Yet Autel somehow asserts this claim is arbitrable too.

28

**Seventh COA: Trespass to Chattels.**  Autel contends this claim is based on "alleged overuse of ProDemand data requests."  (Doc. No. 31 at 18.)  It is not.  Like the other service disruption claims, it is based on Autel's spoofing of the Snap-on devices.  (*See* Doc. No. 1 ¶ 200 ("spoofing dozens of devices"), ¶ 201 (spoofing multiple diagnostic devices), ¶ 203 ("data servers associated with handheld diagnostic devices").)  This claim is not based on ProDemand activities or the ProDemand EULA.

**Eighth and Ninth COAs: Misappropriation of Trade Secrets under the DTSA and CUTSA.**  The trade secret claims against Autel US and Autel ITC are based on stealing proprietary data by spoofing the Snap-on devices.  (*See id.* ¶ 216 (defendants "improperly gained access to this trade secret information by circumventing the security measures that protected access to the devices," then "spoofing the devices")).  While certain categories of this proprietary are also available through ProDemand (*id.* ¶¶ 213, 230), Plaintiffs do not allege that Defendants misappropriated trade secrets via ProDemand.

These claims reference the ProDemand EULA as one of many measures that show Plaintiffs' trade secrets are not publicly available or readily ascertainable.  (*Id.* ¶¶ 211, 228.)  But they do not seek to impose liability based upon violating the EULA.

## 2.  The Four Claims Against Autel ITC Relating to ProDemand Are Not Arbitrable

**First and Second COA's: Violations of DMCA and CFAA**.  The Complaint alleges a DMCA violation based on Autel ITC's "unauthorized circumvention of technological measures that control access to Mitchell 1's ProDemand product."  (*Id.* ¶ 133.)  The claim does not seek to impose liability based on violating the ProDemand EULA.  Autel ITC does not have a subscription to ProDemand. (*Id.* ¶ 134.)  It used the account and credentials of another (Autel US).  (*Id.*)  Discovery has shown Autel ITC used ProDemand credentials issued to Gerhard's as well.  (*See* Roffman Decl. ¶ 3.)

Similarly, the Complaint alleges a CFAA violation based on Autel ITC's unauthorized access of ProDemand by making use of the user name and password

assigned to Autel US (a claim which will now also include Gerhard's).  (*See* Doc. No. 1 ¶ 149.)  This claim does not allege a violation of the ProDemand EULA.

**Third COA – California Penal Code 502(c)**  Similar to the CFAA claim, Autel ITC violated section 502(c)(7) by accessing ProDemand through another entity's user name and password – Autel US (and now Gerhard's as well).  It does not seek liability based on the ProDemand EULA.  Autel also conspired with Autel US "to enable Autel ITC to clandestinely obtain access to ProDemand."  (*Id.* ¶ 162).  This claim again turns on providing Autel ITC with access to ProDemand when it had no subscription, not to impose liability based on the ProDemand EULA.

**Fourth COA – Wisconsin Computer Crimes Act**  Lastly, Autel ITC violated Wisconsin Statute section 943.70(2)(a)(3) by knowingly and without authorization accessing ProDemand.  (*See id.* ¶ 167).  Autel ITC also conspired with Autel US to violate section 943.70(2)(a)(6) by disclosing Autel US's credentials, "enabling Autel ITC to access ProDemand data."  (*See id.* ¶ 173.)  These claims against Autel ITC also do not seek to impose liability based on a violation of the ProDemand EULA.

C.   **The Claims Against Autel US Relating to Snap-on Diagnostic Devices and TruckSeries are Not Arbitrable**

Claims against Autel US that relate to the Snap-on Diagnostic Devices and Truck Series (Doc. No. 1, COAs 3 to 5 at ¶¶ 152-185 and 7 to 9 at ¶¶ 197-239) are not arbitrable for the same reasons described above with regards to Autel ITC.  These claims do not concern the taking of data through ProDemand and do not allege a violation of the ProDemand EULA.  The DMCA and CFAA claims are not alleged against Autel US.  (*See id.* ¶¶ 121-151.)   "There is no policy in favor of arbitrating a dispute the parties did not agree to arbitrate."  *Genoptix, Inc. v. Dabbas*, 2017 WL 4541755, at *2 (S.D. Cal. Oct. 11, 2017) (denying motion to compel arbitration based on clause in unrelated contract) (citation omitted).

sf-4578118

### D. Plaintiffs Agree To Arbitrate The Claims Against Autel US Relating to ProDemand And To Stay Those Claims Once The Court Has Resolved The Preliminary Injunction

Plaintiffs are willing to arbitrate the few claims against Autel ITC that do relate to ProDemand.  These are: (1) the sixth cause of action brought by Mitchell 1 against Autel US for breach of the ProDemand EULA, which is arbitrable, (2) the claim for Autel US's breaches of sections 502(c)(1) and 502(c)(7) with respect to ProDemand; and (3) the claim against Autel US for violating Wisconsin Statute section 943.70(2)(a)(6) relating to its ProDemand account.

Because of the clear language of the arbitration clause, the Court should not stay those claims until the preliminary injunction motion has been resolved.  (Doc. No. 1-4 ¶ 18(c).)  The Court should retain jurisdiction over them for purposes of enforcing the injunction, entering judgment, or granting other ancillary relief permitted by law.

### E. Snap-on's Claims Are Not Arbitrable

For the reasons described in detail above, Snap-on's claims are not "intimately founded upon or connected with" the ProDemand EULA and it is not equitably estopped.  *See Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1095 (9th Cir. 2020) (equitable estoppel did not apply where non-signatory plaintiffs' ADA claims did not claim violation of underlying agreement); *Whole Body Rsch., LLC v. Dig. MD, LLC,* WL 3830902, at *7 (C.D. Cal. July 3, 2018) (equitable estoppel did not apply to non-signatory plaintiffs' copyright and trade dress infringement claims because copying at crux of claims did not depend on underlying agreements).  This is particularly true as the only relevant EULA to which Snap-on *is* a party contains no arbitration clause.

Autel argues that estoppel should apply because Plaintiffs rely on the ProDemand EULA for venue or jurisdiction.  But Plaintiffs rely on that clause ***only*** for purposes of preliminary relief on Mitchell 1's breach of contract claim against Autel US for breach of the ProDemand EULA.  (*See* Doc. No. 1 ¶ 21.)  *See also Cullen v. Shutterfly Lifetouch, LLC*, 2021 WL 2000247, at *6 (N.D. Cal. May 19, 2021)

1   (non-signatory plaintiff not equitably estopped from contesting arbitration provision

2   merely because complaint relied on choice of law and forum selection provisions).

3   Autel also makes passing reference to the corporate relationship between

4   Snap-on and Mitchell 1 as a reason to bind Snap-on.  (Doc. No. 31 at 15.)  Its cursory

5   discussion of agency and third-party beneficiary theories does not suffice.

6   Under California law, a non-signatory can be bound as a third-party beneficiary

7   only if "an intent to benefit a third person appears from the terms of the contract."

8   *Jensen v. U-Haul Co. of Cal.*, 18 Cal. App. 5th 295, 301 (2017).  The burden is high; it

9   must establish that the contract was "made expressly" for its benefit.  *Matthau v.*

10  *Super. Ct.*, 151 Cal. App. 4th 593, 602 (2007); *see also Norcia v. Samsung Telcomms.*

11  *Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017).  "[T]he mere fact that a contract

12  results in benefits to a third party does not render that party a 'third party beneficiary.'"

13  *Murphy*, 724 F.3d at 1234.  Autel cannot establish that the ProDemand EULA was

14  made expressly for Snap-on's benefit and does not even try.

15  Similarly, to impose the duty to arbitrate on a non-signatory based on an agency

16  relationship with a party to the arbitration agreement, the proponent must make a

17  showing that the principal "controlled [the agent's] behavior in ways relevant to

18  Plaintiffs' allegations."  *Id.* at 1232-33.  "[G]eneralized allegations of an agency

19  relationship made in a complaint are not, by themselves, a sufficient ground on which

20  to compel arbitration[.]" *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1214-

21  15 (9th Cir. 2016) (citation omitted).

22  Autel makes only conclusory assertions about Snap-on's control of Mitchell 1

23  based on Snap-on's ownership interest and that Snap-on and Mitchell 1 worked

24  together in their "research and development, operations, provisions of services[.]"

25  (Doc. No. 31 at 14.)  But Autel makes no plausible claim that Snap-on controlled

26  Mitchell 1's behavior, let alone in any way specific to the relevant allegations.

27  **IV.    THE COURT SHOULD NOT STAY NONARBITRABLE CLAIMS**

28  Autel is not entitled to a complete stay under Article 3 of the FAA when only

OPP. TO AUTEL'S MOTION TO COMPEL ARBITRATION & STAY
CASE NO. 3:21-cv-01339-CAB-BGS

sf-4578118

portions of the action are arbitrable.  *See Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019) (no stay for non-arbitrable claims).  Federal law "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, at 20 (1983).

When only some claims are subject to arbitration, the "decision [regarding whether the entire case should be stayed pending the outcome of arbitration] is one left to the district court . . . as a matter of its discretion to control its docket."  *Moses H. Cone*, 460 U.S. at 21 n.23 (1983) (citation omitted)); *see also Radcliff v. San Diego Gas & Elec. Co.*, 2020 WL 6395677, at *6-7 (S.D. Cal. Nov. 2, 2020) (declining to stay proceedings on non-arbitrable claims); *Carefusions Corp. v. Clinical Tech., Inc.*, 2013 WL 12108117, at *6 (S.D. Cal. Aug. 29, 2013) (same).

The Ninth Circuit has noted its "preference for proceeding with the non-arbitrable claims when feasible."  *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 Fed. Appx. 412, 415 (9th Cir. 2002) (unpublished); (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225 (J. White, concurring) ("the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course")).  As the party requesting the stay, Autel "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to someone else."  *Yau v. St. Francis Mem'l Hosp.*, 2013 WL 6326555, at *1 (N.D. Cal. Dec. 4, 2013) (citation omitted).

Autel cites to several cases where the courts stayed non-arbitrable claims, (Doc No. 31 at 23-24), but a key reasoning in those cases was that a stay would avoid duplicative proceedings as to the same issues.  *See, e.g., Burrola v. U.S. Sec. Assocs., Inc.*, No. 3:18-cv-00594-BEN-JLB, 2019 WL 482491, at *12 (S.D. Cal. Feb. 7, 2019) (finding factual issues that will be resolved in arbitration clearly "bear upon [the instant] case" because these facts will determine Defendant's liability).  In *Jope v. Bear Stearns & Co.*, 632 F. Supp. 140, 144 (N.D. Cal. 1985), the court found a stay was appropriate because it found the claims subject to arbitration predominated.  The

1  opposite is true here, as the principal actor is Autel ITC, and the predominant data theft

2  relates to the Snap-on diagnostic devices.

3      Autel never explains how "[t]he findings by the arbitrator may limit or even

4  effectively dispose of any disputes for any potentially non-arbitrable claims," (Doc.

5  No. 31 at 23).  They will not.  Resolution of whether Autel US breached the

6  ProDemand EULA or violated state anti-hacking statutes as to ProDemand, will not

7  resolve Plaintiffs' claims relating to Autel US and Autel ITC's misconduct as to Snap-

8  on's devices or TruckSeries.  They also will not resolve claims for Autel ITC's

9  circumvention of measures or pulling data from ProDemand because, unlike Autel US,

10  Autel ITC did not have a license, so the question is not whether it exceeded the

11  ProDemand EULA's restrictions.  The remaining claims should continue before this

12  Court even if they have some common facts.  *See Performance Excavators, Inc. v.*

13  *Arch Ins. Co*., 2008 WL 298826, at *1 (E.D. Cal. Feb. 1, 2008) (denying discretionary

14  stay even where claims "contain common operative facts" because claims are

15  "separable").  Plaintiffs have the right to pursue their claims that are not based on the

16  ProDemand EULA without having to wait for the arbitration.  *See Fridman v. Uber*

17  *Techs., Inc.*, 2019 WL 1385887, at *6 (N.D. Cal. Mar. 27, 2019).

18      A stay would be extremely prejudicial.  There can be no question now that Autel

19  stole massive amounts of Plaintiffs' proprietary data.  Autel ITC has *admitted* to

20  writing computer programs to scrape that data and to secretly logging in to TruckSeries

21  and ProDemand through accounts issued to others.  (*See* Section II.E., supra.)  There

22  is already extensive evidence of Autel's theft, including events immediately before this

23  suit was filed and even after the TRO was entered.  (*Id*.)  But discovery is only getting

24  started and huge gaps remain, including in particular as to Autel's use of the data.  (*Id.*)

25  Autel clearly hopes that an arbitration under the JAMS Streamlined Rules will allow

26  for less discovery than an action in this Court, and has already blocked depositions it

27  agreed to provide.  Autel's business is built on data theft, and Plaintiffs need to be able

28  to pursue a preliminary injunction, discovery, and a prompt trial in this Court to protect

their proprietary data.  *See Whole Body Rsch.,* 2018 WL 3830902, at *9 (declining to issue stay for copyright and trade dress claims because it would prevent enforcement of intellectual property rights).

In contrast, there is no prejudice to Autel in continuing with the non-arbitrable claims in this forum.  *Chen v. Bank of Am., N.A.*, 2020 WL 4561658 at *3 (C.D. Cal. Mar. 31, 2020) ("given that the parties will need to litigate the non-arbitrable claims irrespective of the arbitration outcome, proceeding with this litigation would not qualify as a waste of judicial resources.")

## V.   THIS COURT IS THE CORRECT FORUM FOR PRELIMINARY INJUNCTIVE RELIEF

### A.   The Arbitration Provision States Parties "Shall Have the Right" to Seek Preliminary Relief From This Court "Before, During, or After Arbitration"

The parties agree that to interpret arbitration agreements, the Court should "apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  (*See* Doc. No. 31 at 12.)  In California, "judicial interpretation" of contracts is "control[led]" by "the 'clear and explicit' meaning of [contract] provisions," unless the parties show a special meaning was intended.  *Clouser v. Ion Beam Applications, Inc.*, 2004 WL 540514, at *3 n.2 (N.D. Cal. Mar. 18, 2004); *see also* Cal. Civ. Code § 1638.

The arbitration provision states, in mandatory terms, that parties "shall have the right" to go to court for preliminary injunctive relief "before, during or after arbitration" and "without awaiting the outcome of the arbitration."(Doc. No. 1-4 ¶ 18(c).)  This clause is unambiguous and uses mandatory language.  Moreover, it is included in as part of the arbitration clause, so there can be no ambiguity that it was intended to exist in harmony with arbitration.  *See Cisco Sys., Inc. v. Wilson Chung*, 462 F. Supp. 3d 1024, 1039 (N.D. Cal. 2020) (honoring injunction clause which was "a separate paragraph directly below the general arbitration agreement provision").

Autel mistakenly contends that the arbitrator must decide in the first instance

whether this clause applies.  (Doc. No. 31 at 20.)  Autel's position cannot be reconciled with the language of the clause giving the parties an unqualified right to seek such relief "*before*" arbitration.  *See In re Affordable Hous. Dev. Corp.*, 175 B.R. 324, 329 (B.A.P. 9th Cir. 1994) ("contract should not be interpreted so as to render [a] phrase of the contract meaningless").  It would be impossible for an arbitrator to decide the applicability of the clause before arbitration.  Similarly, Autel's request for the Court to stay the case before ruling on the preliminary injunction squarely contradicts the provision's language that the parties "shall have the right" to seek preliminary injunctive relief in court "without awaiting the outcome of the arbitration."

Autel's interpretation would also frustrate the ability to obtain provisional relief in court swiftly—the very purpose of such a clause.  *See Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc*., 609 F.3d 975, 981 (9th Cir. 2010) ("Even without bad faith by either party, the selection of arbitrators and the constitution of the arbitral panel necessarily takes time.").

In *NAVEX Global, Inc. v. Stockwell*, Case, 2019 WL 6312558 (D. Idaho Nov. 25, 2019), the court granted a preliminary injunction based on an arbitration clause's injunctive relief provision.  Although the agreement delegated arbitrability to the arbitrator (*see id*. at *3 n.2), the court rejected the argument that the arbitrator should rule on the dispute, because "the plain language in [the] Agreement [] explicitly grants . . . the right 'to apply to any court of competent jurisdiction for a *temporary restraining order*, *preliminary injunction*, or similar relief in order to preserve the status quo …'" *Id.* at *4 (citation omitted).  The language here is even more clear, stating the parties "shall have the right" to seek such relief, without any qualification, "before, during, or after" arbitration.  Like here, the provision was "not tucked away in a remote corner of the Agreement but included in the arbitration clause itself." *Id.*

Similarly, in *Cinedigm Corp. v. Gaiam Inc.,* the court found it could grant a preliminary injunction when the arbitration clause provided the "only exception . . . shall be an action by either party seeking preliminary injunctive relief in a court of

competent jurisdiction." 2015 WL 2084590, at *1, 10 (C.D. Cal. May 5, 2015); *see also Clouser*, 2004 WL 540514, at *1-2, 4 (agreement "expressly permitted" seeking injunctive relief from court when arbitration clause contained injunction provision).

The only case Autel cites to support its position, *Science 37 v. Domo, Inc.*, is readily distinguishable. (See Doc. No. 31 at 20.) In *Science 37*, the parties had a dispute over whether the plaintiff could terminate the contract after one year, and the plaintiff filed suit for "a declaratory judgment that the parties do not have a binding agreement after the first year due to the absence of mutual assent on the material term of pricing." *Sci. 37 v. Domo, Inc.*, 2019 WL 11073307, at *2 (C.D. Cal. July 3, 2019) (citation omitted). In other words, the party essentially sought to bypass arbitration by having the court fully determine the merits of the dispute. The arbitration clause allowed either party to apply to a court "for a temporary restraining order, a preliminary injunction, or other equitable relief to preserve the status quo or prevent irreparable harm." *Id.* at *1 (citation omitted). The court found the agreement delegated to the arbitrator the question of whether the claim for declaratory relief fell within that exception. *Id.* at *6. Here, unlike in *Science 37*, Plaintiffs are seeking a contractually permitted procedural remedy, not the resolution of a claim on the merits. *See NAVEX*, 2019 WL 6312558, at *5 (filing preliminary injunction does not seek to "bypass arbitration" because "[a] preliminary injunction is not a preliminary adjudication on the merits") (citation and internal quotation marks omitted). *See also Chin v. Boehringer Ingelham Pharms., Inc.*, at *5-6 (N.D. Cal. Sept. 11, 2017) (broad arbitration provision and injunctive relief provision compels *claims* to arbitration but retains the parties' right to seek from the court injunctive *relief* for those claims).

Most importantly, unlike in *Science 37*, the parties agreed that they would have the right to seek a preliminary injunction "before" the arbitration. The arbitration clause here is also unqualified and is not limited to preserving the status quo. This further shows that the parties did not intend to require permission from an arbitrator before seeking provisional relief. There would be nothing for the arbitrator to decide.

1    Autel contends nevertheless that Plaintiffs should be prohibited from seeking a

2    preliminary injunction from this Court because the TRO is enough to protect Plaintiffs

3    "until the arbitrator decides the scope of the arbitration and decides whether to award

4    any interim injunctive relief."  (Doc. No. 31 at 22.)  The TRO is not sufficient.  It was

5    negotiated before Plaintiffs had any discovery and narrowed based on a stipulation

6    Autel is now trying to avoid.  As explained in Section II.E. above, discovery has only

7    begun, and has many holes, but has already uncovered extensive additional evidence of

8    wrongdoing, including that Autel has been taking data through the Gerhard's account,

9    evidently as recently as this month.  Plaintiffs require full discovery and have the right

10   in this Court to seek a preliminary injunction fully commensurate with the scope of the

11   wrongful acts that they discover.  *See Robbins Co. v. JCM Northlink LLC*, 2016 WL

12   4193864, at *1-2 (W.D. Wash. Aug. 9, 2016) (rejecting argument that court should not

13   consider preliminary injunction because TRO "sufficiently preserves the status quo").

14   Moreover, Autel's position is contrary to the plain language of the agreement,

15   which gives Mitchell 1 the right to seek preliminary injunctive relief from the Court

16   "during" arbitration.  The parties included this language notwithstanding the JAMS

17   rules permit arbitrators to award interim relief, clearly indicating that they wanted the

18   right to go to court even if an arbitrator had been appointed.  This is consistent with the

19   JAMS Streamlined Rules, which state "[a]ny recourse by a Party to a court for interim

20   or provisional relief ***shall not be deemed incompatible with the agreement to arbitrate***

21   or a waiver of the right to arbitrate."  (Doc. No. 31-2 (Ex. 1 § 19(d) (emphasis added).)

22   The *Cisco* court rejected Autel's argument, holding that the "authority conferred

23   to an arbitrator under the general arbitration agreement provision" to adjudicate

24   equitable claims does not "deprive plaintiff of its ***option*** to" seek injunctive relief with

25   the court under the specific carve-out provision.  462 F. Supp. 3d at 1037-39.

### B.    Plaintiffs Would Have The Right To Seek Preliminary Injunctive Relief Even Without A Contractual Provision

28   Autel's position is even less defensible because Plaintiffs would have the right

1   to seek injunctive relief even without a contractual provision.  *See Toyo Tire,* 609 F.3d

2   975 at 981 ("a district court may issue interim injunctive relief on arbitrable claims if

3   interim relief is necessary to preserve the status quo and the meaningfulness of the

4   arbitration process").  It would be a perverse result if a party with no contractual

5   injunction provision inherently has the right to seek preliminary injunctive relief from

6   the court pending arbitration, but a party with a provision giving it the right to seek

7   such relief "before" arbitration must first go to the arbitrator for permission.

8                   **C.   The Court Has the Power to Order Discovery**

9           Remarkably, Autel argues that even though the parties have the right to seek

10   injunctive relief in court, the arbitrator gets to first decide "whether discovery is even

11   allowed." (Doc. No. 31 at 14.)  But the Court's power to order discovery cannot be

12   dictated by an arbitrator.  The Court "has inherent power to order discovery when the

13   interests of justice so demand." *Trujillo v. Lewis*, at *17 (N.D. Cal. Sept. 29, 2014).  A

14   provision delegating that power to the arbitrator would likely not even be enforceable.

15   But there is no such provision, and Autel has no authority to support its position.  It

16   cites only *Science 37* case, which says nothing of the sort.  (*See* Doc. No. 31 at 20.)

17          Autel also argues that the arbitration provision "does not provide for any right to

18   discovery in the district courts." (*Id.* at 12).  But there is no need to include language

19   spelling out the right to discovery that is already permitted under the Court's powers.

20   By providing for the right to seek preliminary injunctive relief in court, the parties

21   agreed to allow for related discovery.  Courts routinely allow early preliminary

22   injunction-related discovery where, as here, it will aid the court in resolving the

23   preliminary injunction motion.  *See, e.g., Philips N. Am. LLC v. Advanced Imaging*

24   *Servs*., 2021 WL 2593291, at *5 (E.D. Cal. June 24, 2021).

25          Discovery here, where only Autel possess the full evidence of the extent of its

26   data theft, is essential to Plaintiffs' ability to obtain preliminary injunctive relief.

27                  **D.   The Court Should Hold Autel To Its Stipulation**

28          Finally, the Court should decline to stay the preliminary injunction motion and

23

corresponding discovery because, at Autel's suggestion and after extensive discussions, the parties agreed to have the Court order that process.  As set forth in Section II.D. above, Autel's counsel negotiated to have Plaintiffs withdraw their motion for expedited discovery, extend the time for Autel to answer the Complaint, allow Autel to serve early discovery, and agree to an extended briefing schedule for the preliminary injunction motion. (Kuwayti Decl. ¶ 9; Doc. No. 18 at 2, 3-4.)  Plaintiffs also agreed to narrow the scope of TRO they were seeking in exchange for this stipulation.  (*Compare* Doc. No. 11 at 1 with Doc. No. 19 at 2 (for example, narrowing definition of Plaintiffs' Vehicle Diagnostic and Repair Products, and adding additional paragraph (2).)  In exchange, among other things, Autel agreed to engage in expedited and forensic discovery and preliminary injunction briefing, agreed to a narrowed form of Plaintiffs' requested TRO, and Autel ITC waived service an "consent[ed] to personal jurisdiction for purposes of this action." (Doc. No. 18 at 2.)

Autel now argues that its counsel was unaware of the purportedly "fine print" ProDemand EULA arbitration clause.  (Doc. No. 31 at 20.)  Autel does not represent anything regarding the knowledge of Autel US, which hand-signed the agreement, or when Autel counsel first learned of the clause.  *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1589 n.30 (2005) ("if [a party] will not read what he signs, he alone is responsible for his omission") (quoting *Upton v. Tribilcock*, 91 U.S. 45 (1875).)  And the arbitration clause is not "fine print."  It is simply paragraph 18 of the EULA, in the same font as all of the other provisions, with the bolded heading "**Arbitration**." (*See* Doc. No. 1-4 (Ex. 2) ¶ 18.)  It immediately follows the venue provision in paragraph 17, which as Autel points out, Plaintiffs cited in the Complaint and provides, and contains the language "[t]o the extent recourse to a court is allowed hereunder."  (*Id.* ¶ 17)  The ProDemand EULA had been publicly filed ***four times*** as of the time of the parties' negotiations on preliminary injunction stipulation.  (Doc. Nos. 1-3 (executed copy) 1-4 (more legible copy) 6-9 (executed copy), 6-10 (more legible

OPP. TO AUTEL'S MOTION TO COMPEL ARBITRATION & STAY
CASE NO. 3:21-CV-01339-CAB-BGS

1    copy).)  If Autel and its counsel did not read the contract they have only themselves to

2    blame.

3         What Autel did not mention in this motion or its *ex parte* application, is that **30**

4    **days** after the Complaint was filed, Autel served broad sets of 30 document requests

5    and 16 interrogatories, and deposition notices, pursuant to the stipulated order which,

6    **at Autel's insistence**, included a provision opening up discovery.  (Kuwayti Decl. ¶ 9;

7    Doc. No. 19 ¶ 8.)[1]  It is difficult to believe Autel's counsel had still not read the

8    exhibits to the Complaint 30 days after it was filed, and Autel does not claim this was

9    the case.  Autel then waited weeks more to raise this issue.  Because Autel waited until

10   seven days before the due date to seek a stay, Plaintiffs' counsel spent an estimated 50

11   hours or more working on responding to Autel's discovery.  (Kuwayti Decl. ¶ 18.)

12        It is evident that Autel has simply changed its mind about defending against

13   Plaintiffs' claims in district court.  But Plaintiffs relied on Autel's stipulation, and

14   Autel should not be permitted to renege on it now.

15        **VI. CONCLUSION**

16        Plaintiffs request that the Court deny Autel's motion, lift the discovery stay, and

17   re-set the preliminary injunction schedule to allow for the completion of related

18   discovery.

19

20

21

22

23

24   _____

[1] Autel complained in its *ex parte* application about the breadth of Plaintiffs' second set
25   of requests (Doc. No. 32 at 4), but most of these requests are directly targeted at the
     preliminary injunction *See* Doc. No. 32-2 (Ex. 1) (RFP Nos. 21, 23, 25, 27-29, 31-42),
26   Doc. No. 32-3 (Ex. 2) (Interrogatory Nos. 12, 14-18).  The broader requests were
     mirrored after Autel's earlier-served discovery.  *Compare, e.g.,* Doc. No. 32-3 at Ex. 2
27   (IROG 11) with Kuwayti Decl. Ex. 6 (IROG 6). Moreover, Plaintiffs offered to
     mutually narrow the requests, and have agreed to accept Autel's latest proposal.
28   (Kuwayti Decl. ¶ 19 and Ex. 7.)

Opp. to Autel's Motion to Compel Arbitration & Stay
Case No. 3:21-cv-01339-CAB-BGS

1

Dated: September 29, 2021               MORRISON & FOERSTER LLP

2

3                                       By: */s/ Kenneth A. Kuwayti*
                                            Kenneth A. Kuwayti
4
                                        Attorneys for Plaintiffs
5                                       MITCHELL REPAIR INFORMATION
                                        COMPANY, LLC and SNAP-ON
6                                       INCORPORATED

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26                OPP. TO AUTEL'S MOTION TO COMPEL ARBITRATION & STAY
                  CASE NO. 3:21-CV-01339-CAB-BGS