UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL REPAIR INFORMATION COMPANY, LLC, et al.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>AUTEL US INC., et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:21-cv-01339-CAB-BGS<br><br>**ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR CONTEMPT AND COMPLIANCE WITH SETTLEMENT AGREEMENT**<br><br>[Doc. Nos. 69, 70] |

　　　In July of 2021, plaintiffs Mitchell Repair Information Company, LLC and Snap-on Inc., (collectively "Snap-on") filed a complaint alleging, among other claims, misappropriation of trade secret data by defendants Autel. US Inc. and Autel Intelligent Technology Corp., Ltd. (collectively "Autel"). The matter was ordered to arbitration in October 2021. In January 2024, the parties returned to the District Court having resolved the dispute during the arbitration with a settlement agreement entered on December 21, 2023. [Doc. No. 63.] The parties also jointly stipulated to a consent judgment and permanent injunction which this Court entered on January 9, 2024, which included a provision that the Court retained jurisdiction over the enforcement of the permanent injunction and the settlement agreement. [Doc. No. 64.]

　　　In July 2025, Snap-on filed the motion at issue alleging Autel was in contempt of the terms of the permanent injunction and not in compliance with the settlement agreement.

[Doc. Nos. 69, 70.] After several rounds of briefing the Court held an evidentiary hearing on December 19, 2025. As set forth below, Snap-on's motion is **GRANTED-IN-PART**.

Specific to the allegations in the motion at issue are the terms in the injunction that prohibited access to and transfer of Snap-on's proprietary data after the entry of the injunction and the terms in the settlement agreement that required Autel to identify and preserve devices, repositories, etc., that may contain Snap-on information and produce them to the independent forensic examiners (A&M/FTI in China). Starting in February 2024 and continuing for approximately a year, Autel contends it produced/provided access to A&M to a significant number of devices, data repositories, and files.

As part of the independent forensic examination, the forensic examiner notified the parties in April 2025 that after the entry of the injunction and before the audit began, certain examined devices appeared to have been connected to unidentified internal and external hard drives ("additional repositories") which may have transferred Snap-on data to specific devices that were then produced for examination, but the additional repositories were neither identified or produced. [*See* Hr'g Tr. 31:8–32:14.] Such data transfers made after the entry of the injunction constitute a violation of the injunction if they contained Snap-on proprietary data. Failure to preserve and produce those drives also constitutes a violation of the settlement agreement.

Autel reported to the independent examiners that it looked for but could not locate the hard drives of concern while refusing the examiners access to locations in which the drives might be stored thwarting the independent investigation. [Hr'g Tr. 37:24–38:11 ("All [the examiners] can do is ask for these things and ask for the cooperation. And if there is no recollection or if there's no ability to turn the device over, I don't know what else we can do, as the examiner."), 50:12–15 ("[W]e were limited to Autel IT areas in their control."). Additionally, certain custodians of devices at issue were not made available for interview based on representations they no longer worked at Autel. [*Id.* at 39:21–40:18, 51:3–7 (explaining that the examiners asked to be connected with former employees of interest and were told by Autel "they would not be able to do that"), 51:14–24 (explaining

that one of the employees of interest may work at an Autel office location that the examiner was unaware of).]

In July, A&M issued a follow-up report indicating that based on the devices and individuals to which they had access they could not determine what data may have been transferred prior to the commencement of the audit and might still be retained by Autel. At the evidentiary hearing, the witness for A&M, Jeff Teso, testified that he would have preferred more access to persons and locations to be satisfied the investigation was complete, but under the circumstances accepted Autel's representations that Autel had investigated the pertinent locations and that it no longer could make the employees of interest available. [*E.g.*, Hr'g Tr. 61:18–63:2.]

The Court notes that the independent audit is still ongoing with many produced devices to still be inspected. Whether the production by Autel is complete and whether additional repositories exist based on the handful of devices that have been examined is the focus at this time. In part, Snap-on is concerned that future inspection of produced devices will further demonstrate that Autel has not allowed for and provided a complete independent inspection of its records and devices and Snap-on data is still being retained by Autel. Snap-on seeks intervention by the Court now to enforce Autel's obligations to provide access to all the relevant materials identified by the examiners.

The Court finds that the evidence presented, both direct and circumstantial, supports Snap-on's motion that Autel is not fully complying with the terms of the injunction and the settlement agreement. A contempt finding requires clear and convincing evidence of violations beyond technical violations that are not based on good faith or reasonable interpretation of a court's orders. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Though the evidence from the limited number of devices examined to date supports that Autel committed technical violations of the injunction, the Court does not conclude currently that these technical violations combined with Autel's reticence to provide the independent forensic auditors access to locations and

personnel rises to the level of contempt, but they do not demonstrate a good faith interpretation of the Court's orders.

Considering Autel's obligations in the settlement agreement and pursuant to the terms of the injunction, it is insufficient for Autel to merely state they looked for but could not find further devices or repositories identified by the examiner. The purpose of the independent auditors is to permit a thorough investigation. Refusing access to places or persons does not reflect good faith compliance. Therefore, in response to Snap-on's motion, the Court **ORDERS**:

1. Autel permit the independent examiners access at the examiners' request to locations the examiners find necessary to complete their investigation. Refusal to allow such access must be documented by Autel in an affidavit submitted to the Court within thirty (30) days of refusal explaining why such access is being denied.

2. Autel immediately provide the last known contact information for employees identified by the examiners as relevant custodians and if such employees are still within the employ of Autel at other locations, to promptly make them available for interview.

3. Autel must provide timely payments to the independent auditors in accordance with the agreement. Delay in payment will be considered a bad faith act.

4. Within thirty (30) days of the date of this Order, the independent examiners are to provide a schedule to the Court and the parties outlining their expectations as to how long the audit will take to complete.

///
///
///
///
///
///

Although the Court has not concluded at this time that Autel is in contempt of the Court's injunction, failure to comply with this order will be considered further evidence that Autel is not meeting its obligations in good faith and sanctions will be ordered.

It is **SO ORDERED**.

Dated: January 14, 2026

Hon. Cathy Ann Bencivengo
United States District Judge